# BOYD *v.* JANESVILLE HAY TOOL COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 305. Argued April 23, 24, 1895. — Decided May 20, 1895.

Under letters patent No. 300,687, granted June 17, 1884, to John M. Boyd for improvements in hay elevators and carriers, the patentee, in view of the state of the art, was entitled, at most, only to the precise devices mentioned in the claims, and that patent, so construed, is not infringed by machines constructed under patent No. 279,889, granted June 19, 1883, to F. B. Strickler.

JOHN M. Boyd filed a bill in the Circuit Court of the United States for the Western District of Wisconsin against the Janesville Hay Tool Company and its officers, charging the defendants with infringement of letters patent granted the complainant, numbered as No. 300,687, and dated June 17, 1884, for an improvement in hay elevators and carriers.

The answer denied that complainant was the original and first inventor, and alleged anticipating patents, prior knowledge and use by others, and that defendants have made and sold hay carriers in accordance with patent No. 279,889, granted June 19, 1883, to F. B. Strickler.

There was a general replication; evidence was put in; on November 9, 1888, a decree was entered dismissing the bill of complaint, and from this decree an appeal was taken to this court.

*Mr. Curtis T. Benedict* for appellant.

*Mr. Charles K. Offield* for appellee.

MR. JUSTICE SHIRAS, after stating the case as above, delivered the opinion of the court.

John M. Boyd, the appellant, filed his application on October 25, 1882, and, after several amendments, letters patent were granted him on June 17, 1884, and numbered as No.

300,687. The specification discloses that the invention has relation to improvements in hay elevators and carriers, and consists in the peculiar construction of the several parts and in their combination and arrangement. There are fourteen claims, of which twelve appear to be for combinations of parts, and two for specific devices which are claimed to be novel.

It clearly appears that Boyd was not a pioneer in this department of machinery. Many inventors had preceded him, and many patents had been issued for improvements in hay carriers in form and purpose similar to those described in Boyd's specification. We think the case is one where, in view of the state of the art, the patentee is only entitled, at the most, to the precise devices mentioned in the claims.

It is conceded that the defendants, before this suit was commenced, were manufacturing and selling hay carriers made under the Strickler patent, No. 279,889, dated June 19, 1883; and it is claimed, on behalf of the appellant, that, as the application for the Strickler patent was filed on May 15, 1883, several months after Boyd's application, the Strickler patent furnishes no defence to the defendants if the machines made and sold by them infringed any of the Boyd claims.

Upon the assumption that, owing to the previous condition of the art, Boyd is to be restricted to the exact and specific devices claimed by him as novel, we do not deem it necessary to determine whether either Boyd or Strickler invented anything, because we think that the appellant has failed to show that the defendants have used the particular devices to which Boyd can be considered entitled. Our discussion, therefore, will be confined to the question of infringement.

As both applications were pending in the Patent Office at the same time, and as the respective letters were granted, it is obvious that it must have been the judgment of the officials that there was no occasion for an interference, and that there were features which distinguished one invention from the other. In *Pavement Co.* v. *City of Elizabeth*, 4 Fish, 189, Mr. Justice Strong said: "The grant of the letters patent was virtually a decision of the Patent Office that there is a substantial difference between the inventions. It raises

the presumption that, according to the claims of the latter patentees, this invention is not an infringement of the earlier patent." It would also seem to be evident that, as the purpose of the invention was the same, and as the principal parts of the respective machines described were substantially similar, it was also the judgment of the office that the distinguishing features were to be found in some of the smaller and, perhaps, less important devices described and claimed. *Burns* v. *Meyer,* 100 U. S. 671.

We find it useful to adopt the following description of the Boyd invention, given in appellant's brief:

"This carrier involves novel features, which may be stated in a general way as follows:

"The stop $h$, (adapted to be secured to the under side of a single track,) having the continuous lugs $h^3$ inclined upwardly from each end of the stop to the centre, and therewith the downwardly inclined lugs or bearings $h^4$; the stop being adapted to lift the catch coming to it from either direction; to engage the catch and prevent the travel of the carrier; to force the catch down (if it fails to fall by gravity) as it leaves the stop, and to permit the carrier to run past it when desired. The catch (or key) $g$ sliding vertically in the carrier, having lugs adapted to catch the inclines of the stop and be lifted thereby; and (being held up by the grapple) to engage the stop and prevent travel of the carrier on the track; and when released to 'drop' in front of and lock the grapple.

"The combination of the vertically-sliding catch $g$, with the stop aforesaid, and with the tilting grapple, by which the catch or key is lifted by the stop into locking engagement with said stop, and is locked thereto by the grapple, and being released falls or is forced down by the stop into locking engagement with the grapple."

We learn from this description that what the counsel of the appellant regards as the special features of the Boyd invention are the stop $h$, the catch $g$, and their combination in the manner pointed out. And when we turn to the evidence of the appellant's expert, Cunningham, we find that, in analyzing the Boyd machine, he dwells chiefly on the functions

J. M. BOYD.   Hay Elevator and Carrier.   Patented June 17, 1884.

of the stop and of the catch, as constituting its meritorious features, and that the effect and purpose of his testimony, as likewise that of Boyd himself, are to show that there are a similar stop and catch in the defendants' carrier.

So, too, in the letters patent we find Boyd's second claim set forth as follows:

"In a hay elevator and carrier, the combination, substantially as described and shown, of the stop $h$, constructed with the upper lugs $h^4$ and the lower inclined lugs $h^3$ and the catch-block $g$, provided with the lugs $g^8$, and placed and sliding in a suitable recess in the body of the carrier, substantially as and for the purposes set forth."

When we examine the machine as made and sold by the defendants, under the terms of the Strickler patent, we do not find these specific devices, or, rather, we do not find them in the shape and with the functions claimed by Boyd.

The comparison made by the defendants' expert, Powers, between the mechanism of the two inventions, in the particulars we are now considering, was as follows:

"I do not find the Boyd invention, as summed up in the second claim of his patent, in defendants' carrier, for these reasons: First. The stop enumerated in the second claim of Boyd has a peculiar construction, having lugs $h^4$ upon its upper outer ends and lower inclined lugs $h^3$. Defendants' stop has no occasion for Boyd's lugs $h^4$, nor has it any such lugs; neither are they necessary for the operation of the catch-block Defendants' catch-block has only sufficient space between its lugs and its opposite lower portion to allow it to play freely up and down the incline of its stop, and would, therefore, work just the same upon its stop without the upper ledge as it would with it. It will even be noticed that the portion of the stop below the lugs is rounded and adapted to coact with the lugs upon a single inclined or lower ledge, and independent of an upper ledge. This fact is fully demonstrated by operating defendants' catch-block upon the cam plate, upon which there is no upper ledge. Thus, the stop of Strickler is, and may be, a differently constructed device from that of Boyd, and such a construction as leaves entirely out a leading es-

sential element enumerated in the second claim of the Boyd patent.

"A reference to figure 2 of the Strickler patent (page 266) clearly shows that his catch-block was adapted to be governed by the lower ledge entirely, not to encounter the upper ledge of the stop at all, and this more fully confirms me in the opinion that the Strickler stop is an entirely different device in principle and operation from that of Boyd with its upper lugs $h^4$.

"I further find the Boyd catch-block to be substantially different in the fact of the largely increased space between its lugs and base, rendered necessary in order to enable it to engage lugs $h^4$, which are considerably higher up from lugs $h^3$, in order to enable said catch-block to remain at its extreme height until it encounters stops $h^3$ at either end of the device, it being the operation of the Boyd machine not to stop the carrier centrally to the stop $h$, but at either end of it at stop $h^4$. It is obvious that Boyd's catch-block could not be made operative upon a single ledge as can that of Strickler's; but, on the other hand, it is adapted to such a stop specifically as Boyd shows in all of his figures in which it is shown, four in number, to wit, in figures 2, 3, 5, and 6 of his drawings; and no modification of the stop is shown or described further than as seen in these four figures in his patent. The same is true of Boyd's catch-block; it being shown in all cases with a large space up and down to enable it to work practically up just such a stop as he shows."

F. B. STRICKLER. Hay Elevator and Carrier. Patented June 19, 1883.

We regard and adopt this comparison as correct; nor do we find anything in the evidence or the argument of the appellant to the contrary.

Doubtless, if the Boyd patent contained an invention entirely new, and first adapted to the end sought, such differences might be regarded as formal and evasive. But, coming as he did in the train of the numerous inventors that had preceded him, whose inventions had been patented and put into practical use, we must conclude that Boyd, if entitled to anything, is only entitled to the precise devices described and claimed in his patent. Of course, it follows that if the defendants' specific devices are different from those of Boyd, no combination of such devices could be deemed an infringement of any combination claimed by Boyd.

These views of the case bring us to the conclusion reached by the court below, and its decree dismissing the bill is accordingly                                                    *Affirmed.*

Mr. Justice GRAY did not hear the argument and took no part in the decision of the case.