WILLIAM MANN CO. v. HOFFMANN.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1900.)

No. 648.

PATENTS—INFRINGEMENT—LOOSE-LEAF BINDERS.

The Leslie patent, No. 581,123, for improvements in binders for holding loose leaves, commonly known as "perpetual ledgers," does not embody a pioneer invention, but merely an improvement on prior devices, and therefore entitles the patentee to protection only for the specific improvement introduced into the previous combinations, which consists only of the peculiar form of the posts which connect the back pieces and, by engaging with notches cut on the edges of the sheets, hold them in place. Claims 8 to 13, inclusive, which do not mention such feature, but are general in their terms, must be confined to the particular construction of the device shown in the specification to avoid anticipation, and, as so construed, they are not infringed by binders made in accordance with the Hoffmann patent, No. 568,251.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

For former opinion, see 96 Fed. 237.

The bill of complaint of the William Mann Company, appellant, alleges infringement of letters patent of the United States No. 581,123, granted to Leon M. Leslie, assignor to the William Mann Company, for "improvements in binders," dated April 20, 1897, on application filed August 3, 1896, and the appeal is from a decree of dismissal on final hearing. The charge of infringement, as stated in the brief for the appellant, is based on the manufacture and

sale by the appellee, Hoffmann, of "loose-leaf ledgers, made in substantial ac-
cordance with the structure shown in patent No. 568,251, granted September
22, 1896, to said Hoffmann"; and the controversy is further stated to be
"concerned with what are known as 'loose-leaf ledgers,' which are books, in
effect, permanently bound, but any leaf of which can be removed, reinserted,
or replaced at any desired point." Aside from the showing of the appellee's
patent, the application for which was pending in the patent office concurrently
with the application on the part of Leslie, and the further showing that a dec-
laration of interference in respect of the Hoffmann. claims was demanded by
Leslie and denied by that office, numerous anticipatory patents are set up by
way of defense, with an allegation thereupon that the several claims on which
infringement is predicated are invalid.

The specifications of the Leslie patent are as follows:

"My invention relates to that class of temporary binders known in the trade
as 'perpetual ledgers,' and is designed to embody certain improvements where-
by they be made more compact and easily manipulated. It is further designed
to fasten the sheets thereof in the binder in such a way that any sheet may be
extracted from the binder without loosening the remaining sheets from the
binder, and thereby possibly disarranging them. As hitherto constructed, in
one form, they have consisted of an upper and a lower back piece, connected
by posts which pass through apertures in the loose sheets, which are placed
between and clamped by the said back pieces. With this construction, when-
ever it was desired to remove a sheet, it was necessary to completely separate
the back pieces, and remove the desired sheet and all that might be above it
by lifting them bodily until the apertures in the sheets are freed from the
posts. In my improved construction I make the posts co-operate with notches
or projections on the edges of the sheets, instead of passing through apertures
in the sheets, whereby I am enabled to remove any desired sheet without
completely removing all superposed sheets; but all that is necessary is to re-
move the superposed sheets enough so that the desired sheet may be bent until
its notches or projections are freed from the posts. It has also been proposed
to build such binders with spring backs, which, when in place, tend to hold
the sheets together, and in which the sheets are accurately secured in place
by means of pivoted links on the ends of the spring backs. which take into
notches in the edges of the sheets. With such a construction, if it were de-
sired to remove any sheet, it would be necessary to release the pressure
of the spring backs on the sheets, and then, having swung out the links, to
withdraw the desired sheet and thereby displace the other sheets, as they
are not held in place by any mechanism whatever. In my improved construc-
tion I employ posts to co-operate with the notches or projections on the edges
of the sheets, which posts are rigid with their back pieces and are connected
with each other, so that the posts are never withdrawn from the sheets that
are not to be extracted, and the other sheets, consequently, cannot be displaced
while any desired sheet is being withdrawn. My invention further consists in
the combination, with the binder, as above described, of a spring-catch locking
device between the back pieces, so that they will be held as adjusted in any
position until they are released by applying a key to said lock. To further
illustrate my invention, I annex hereto a sheet of drawings, in which the same
reference letters are used to designate identical parts in all the figures, of
which Fig. 1 is a perspective view of my ledger with a few sheets in place;
Fig. 2 is an inverted detail view in elevation, some of the covering being
broken away, showing the construction of the spring-catch locking device; Fig.
3 comprises an elevation and section of the telescoping posts co-operating with
the notches in the edges of the sheets; and Fig. 4 is a plan view of one of
the sheets. The upper and lower back pieces, F and A, are rigid metallic
plates, which may be covered with leather and have covers attached thereto
by flexible hinges, as is customary in this class of devices. I have not, how-
ever, illustrated these covers, as they are not deemed to be any part of my in-
vention. Near each end of the back piece, A, is an upwardly projecting triangu-
lar metal post, G, which is rigidly fastened to the back piece, A; and co-oper-
ating with each of said posts, G, is a post, B, rigidly fastened to the back
piece, F, and located just outside of the posts, G, and having a quadrilateral
cross section, so that the cross section of the posts, G and B, taken together,

form a substantially equilateral triangle, as shown in Fig. 3. To insure these posts, G and B, always remaining in proper juxtaposition, I make a slot, b, in the post, B, and I pass one or more screws, g, through this slot, and screw them into the post, G. To prevent the heads of the screws, g, from projecting, I countersink the outer portion of the slot, b, to receive the heads. To co-operate with the structure hitherto described, I employ loose sheets, E, as shown in plan view in Fig. 4. These sheets have triangular notches, e, which co-operate with the posts, B and G, as clearly shown in Fig. 1. With all the available space between the back pieces, A and F, filled with the sheets, E, if it is desired to remove any sheet, all that is necessary is to draw apart the back pieces, A and F, as far as permitted, and then to open the book at the desired sheet, when it will be found that there is sufficient space between the sheets, E, to permit of the desired sheet, E, being bent enough to disengage it from the posts, B and G. As these posts have the same bevel, it will be noted that when the back pieces, A and F, are separated, or the binder expanded, the leaves will have no more play in the expanding part of the binder than the leaves contained in the main body of the binder, which will be noted as a considerable advantage. It will be understood that I might construct my posts so that the combined cross section should be of some other shape than triangular, the only essential being that the cross sections of each of the co-operating posts shall correspond to the shape of the apertures or projections, so that the sheets shall be held with the same amount of play, whether they are held by the co-operating posts separately or together. In order to secure the back pieces, A and F, firmly in any desired relative position, so as to make a practical book capable of standing ordinary usage, I add to the structure hitherto described the spring-catch locking device shown in Figs. 1 and 2. This consists of two parallel posts, D, adjacent the edge of the back piece, A, and at the central portion thereof, provided with teeth which co-operate with a pair of spring-pressed dogs, a, pivotally mounted on the inside of a casing, I, formed at the lower end of a plate, II, projecting downwardly from the back piece, F. The edges of this plate, II, are curved, so as to form tubes inclosing the posts, D. It will be seen from this construction that when the ledger is well filled with sheets, and the back pieces, A and F, are pressed together, the posts, D, passing into the tubes formed on the plate, II, will be engaged by the dogs, a, and held firmly in whatever position they may be placed, as the dogs co-operating with the notches in the posts, D, will prevent the pieces, A and F, being separated under the expansive force of the sheets, E. It will be noticed that these sheets, E, have notches, d, to accommodate the locking device. When it is desired to unlock the back pieces, a key having oppositely disposed lugs is inserted in the keyhole, J, and it will be seen from Fig. 2 that, when such a key is inserted and turned, its lugs will take against the tails of the dogs, a, and thus release them from the notches in the posts, D, and permit the back pieces, A and F, to be separated so far as the slot and pin connection of the posts, B and G, will permit. While I have shown my invention as embodied in the form now designed by me to be the simplest and most practical, yet it will be understood that it is capable of some modifications clearly within the scope of the invention. For instance, instead of breaking the continuity of the outline of the sheet, E, by the notches, e, and having the posts, B and G, enter said notches, I might break its continuity by projections, and form and adjust the posts, B and G, so as to inclose the projections, and thus hold the sheets, E, in place by co-operating with the projections. It is also manifest that I might make the posts, B and G, to telescope, instead of having them co-operate in the manner shown. Therefore I do not desire to be limited to the exact structure shown and described, but I desire to cover such constructions as are fairly within the terms of the following claims."

The first seven claims of the patent relate to the structure and specific feature of the co-operative posts and sheets, whereof infringement is not asserted, the seventh claim reading as follows, and furnishing a fair example of their import:

"(7) A temporary binder, comprising the upper and lower back pieces, with triangular posts between the two, said lower back piece being provided with parallel, upwardly projecting posts having teeth, a casing sliding on said posts

and carried by the upper back piece, and locking mechanisms, secured to said casing, adapted to engage the teeth on the parallel posts, and leaves having V-shaped notches on each edge beveled to correspond to the triangular posts, and having cut-out portions at their rear ends to allow for the sliding movement of the locking casing, substantially as described."

The claims of which infringement is alleged are as follows:

"(8) A temporary binder, comprising the rigid back pieces with connecting pieces rigid therewith, and permanently, but loosely, connected to their co-operating connecting pieces, and having a limited sliding movement, so as to permit movement of the back pieces towards and from each other, whereby the binder may be expanded, but not separated, so that any sheet may be extracted without freeing the others from the binder, and means for locking the pieces in any desired position, substantially as described.

"(9) In a temporary binder, the combination of the back pieces having the posts rigid therewith. and permanently, but loosely, connected to and co-operating with each other, with the sheets having a broken outline, the said posts co-operating with the broken outline portion of said sheets, to hold them in position, so that any sheet may be extracted from the binder without freeing the others from the posts, substantially as described.

"(10) In a temporary binder, the combination of a rigid back piece having a plurality of posts rigid therewith with a similar back piece having a plurality of posts permanently, but loosely, connected to and co-operating with the posts of the first-named back piece, and sheets having notched portions co-operating with said posts, so that any sheet may be extracted from the binder without releasing the others from the posts, substantially as described.

"(11) In a temporary binder, the combination of the back pieces having the posts rigid therewith, and permanently, but loosely, connected with their co-operating posts, with the sheets removably held in position by said posts, so that any sheet may be withdrawn from the binder without releasing the others from the posts, substantially as described.

"(12) In a temporary binder, the combination of the back pieces having the posts rigid therewith, and permanently, but loosely, connected with their co-operating posts, with the sheets removably held in position by said posts, so that any sheet may be extracted from the binder without freeing the others from the posts, and locking mechanism, connected to said back pieces, whereby they may be locked in any desired position, substantially as described.

"(13) In a temporary binder, the combination of the back pieces having the posts rigid therewith, and loosely connected to and co-operating with each other, with the sheets having a broken outline, the said posts co-operating with the broken outline portions of said sheets to hold them in position, so that any sheet may be extracted from the binder without freeing the others from the posts, and locking mechanism, connected to said back pieces, whereby they may be locked in any desired position, substantially as described."

The specifications of the Hoffmann patent are these:

"My invention relates to an improvement in temporary binders, and I have designed the form herein shown, described, and claimed for use especially in connection with flat-opening leaves, which may be readily removed. and replaced by new ones, and the binder then locked firmly upon the leaves, forming a complete flat-opening book. As usually constructed, temporary binders comprise two covers, rods secured to an edge of one of said covers and adapted to be inserted through suitable openings in the corresponding edge of the other cover, and means for detachably securing or locking said removable cover to said rods at any desired point on said rod, the temporary files being placed over the rods, between the covers, and bound together by forcing the edge of the top cover firmly thereupon, and securing or locking said cover in position. An application of such a binder just referred to has been heretofore made to what are known in the trade as 'perpetual ledgers'; that is, flat-opening account books in which the leaves are all separately placed in said binder and may be removed and replaced at will. In said temporary binders, as usually constructed, the leaves are provided with perforations fitting down over the rods, and when it is desired to remove any particular leaf a separate transfer wire is used, upon which all leaves preceding the one to

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

be removed are placed, and the latter then slipped off the rods, the other leaves being then turned back to proper position. These binders are open to objection by reason of the inconvenience and amount of time required in using the transfer wires for removing and putting in the leaves, and to obviate these defects it has been proposed to provide a temporary binder comprising a base piece with triangular shaped vertical posts attached thereto, a top piece having correspondingly beveled downwardly projecting posts having a sliding engagement with the first-mentioned posts, and to have the flat-opening leaves of the book provided with beveled notches on each edge adapted to engage said triangular posts. By this construction, by raising the top cover slightly, leaves can be extracted or inserted by merely giving them a slight bend and drawing the notches away from engagement with the posts. This construction just described is, however, open to the objection that the leaves must be notched at the rear central portion to make room for the locking device, and, furthermore, no arrangement is provided for protecting the outer edges of the

leaves from dust or dirt. The object. of my invention is to obviate the difficulties existing in both of the devices as above described. and to this end it consists, primarily, of a base piece and a top piece, one of said parts being provided at either end with vertical boxes or chambers, closed, except on one side, and adapted to receive the stubs of the leaves; secondly, it includes, in addition to the above, removable backs for the books, whereby the entire rear edges of the leaves may be protected; and, finally, it includes a new locking device and a novel arrangement for manipulating the top cover, to raise the same, to allow of insertion and removal of said other leaves. The invention is illustrated in the accompanying drawings, in which Fig. 1 is a perspective view of a temporary binder embodying the invention; Fig. 2 is a view, partly in section, of the locking mechanism; Fig. 3 is a rear view of the binder; Fig. 4, a plan view of a flat-opening leaf, preferably used in connection with this binder; Fig. 5 is a perspective view of a binder to which leaves may be transferred after an account has been closed or a leaf filled up; and Fig. 6 is a perspective view, partly in section, showing a complete view of a temporary binder embodying my invention. In the drawings, A represents an under cover or base piece of a temporary file, which may be of any approved construction, or, if it is not desired to have an under cover, this may consist merely of a metal base piece having secured to it the upwardly extending posts, B, herein shown as composed of the rear portion, a, with the laterally extending flanges, b, forming a chamber closed on three sides, as shown clearly in Fig. 3. Adjacent the edge of the base piece, A, and preferably in a vertical plane corresponding with the vertical plane of the rear flange of the post, B, is a plate, C, bent to form the hollow posts, B; these posts being provided with the lateral flanges, c, for the purpose hereinafter referred to. E represents, as a whole, the upper cover, constructed in the usual manner, and projecting downwardly from the under side of the binding piece, F, of this cover, are posts or chambers, G, adapted to engage with and slide within the posts or chambers, B, on the base piece, and by this arrangement, when the leaves are put in position, the upper cover or binding piece may be forced towards the base piece, the edges of the stubs of the leaves being cut a proper size to fit within the chambers or casings, G, and thus be prevented from longitudinal movement and protected from dust or dirt. Also projecting downwardly from the binding piece, F, are toothed rods, H, which slide up and down within the hollow posts, D. I is a removable plate, attached to the plate, C, the two forming between them a casing in which are pivoted, near the upper end, two gear wheels, e, f, meshing with each other and with the teeth on the posts, H. One of these gear wheels has a hub, passing through it, arranged to receive a key by which it may be turned, so that by turning said gear wheel with the key the two posts may be made to ride up or down. To prevent any improper tampering with the binder, a locking dog, g, is provided, slotted to slide back and forth on pins, h; this dog having a pointed end adapted to engage with the teeth of the gear wheel, e. The same key which fits the gear wheel, e, and rotates it, also fits the keyhole, K. and engages with the locking dog to move it into or out of engagement with the teeth of the wheel, e. When it is desired to remove or insert a leaf, the dog is unlocked from engagement with the wheel, e, the key taken out and inserted in the hub of the wheel, e, and the latter turned to raise the upper cover. In order to protect the rear edges of the sheets from dust or dirt, removable pieces or backs, K, of leather or suitable material, may be provided, which are guided into proper position and held at one end by the clamping flanges, l, secured to the posts, B, and which, at their opposite ends, rest on the flanges of the lock casing heretofore referred to. The numeral 10 represents flanges extending between the members, but which form no part of the invention. In connection with this binder I have illustrated a special form of leaf which I have found preferable, and it is constructed as shown in Fig. 4, having a hinge of linen or muslin pasted to the rear edge of the leaf, and having a rectangular re-enforcing strip on the rear edge of the hinge, said hinge being notched, as shown at m, but leaving the lateral rear edge of the hinge and re-enforce squared to fit quite closely within the chamber or casing, G. In Fig. 5 I have shown a transfer ledger which I have found of value in connection with my improved device. In this construction only posts, G', are used, and they are made con-

siderably longer than those on the ordinary perpetual ledger. It will be understood that any ordinary locking mechanism may be used to secure the upper binding piece upon these posts, and I have not herein deemed it necessary to illustrate such locking means,—the principal object of illustrating this transfer ledger being to show that the same idea of having the flanged posts

forming a recess to receive and guide the projecting ends of the rear edges of the leaves may be applied to this transfer ledger as well as to the perpetual ledger; but it will be understood that any suitable arrangement for securing the upper cover in position may be provided. To remove or insert a leaf, all that it is necessary to do is to unlock the binder, move up the top piece, lay the book on its back, and open, and it will be found that there is sufficient play to separate the leaves at any desired place, so that by curving any leaf a little it may be easily lifted out."

The appellee's structure as manufactured differs from that set out in his patent in the substitution of a locking device, which is described by the appellant's expert as serving "the double purpose of fixing the limit of movement of the two back pieces away from each other and of rocking the back pieces in any desired relation within their limit of movement, to which they may have been adjusted,"—such limit of longitudinal movement not being furnished by the "telescoping channel-shaped posts" of the Hoffmann structure. The answer of the appellee discloses that his form of perpetual ledger, as patented, was devised subsequently to that of Leslie and with full knowledge of that structure; but the file wrapper and contents in the matter of the Leslie patent show simultaneous consideration in the patent office of both applications, and the denial of a declaration of interference which was urgently requested on behalf of Leslie. The same record shows that sundry amendments were imposed by the rulings of the patent office to restrict the original broader claims in the Leslie application, on reference to British patents. The prior art is shown in two devices of the patentee, Leslie, which were in public use more than two years before his application in question, and various foreign and domestic letters patent. The following letters patent of the United States are especially referred to the briefs: Peck, No. 151,427, May 26, 1874; Adams, No. 169,665, November 9, 1875; Archer, No. 185,205, December 12, 1876; Paxson, No. 283,653, August 21, 1883; Appleby, No. 324,451, August 18, 1885; Doyle, No. 333,061, December 22, 1885; Snow, No. 337,027, March 2, 1886; Lake, No. 341,252, May 4, 1886; Blackburn and Brimm, No. 410,346, September 3, 1889; Moynahan, No. 427,350, May 6, 1890; Henry, No. 431,350, July 1, 1890; Morehouse, No. 464,731, December 8, 1891; Waide, No. 484,349, October 11, 1892; Stoelting, No. 486,989, November 29, 1892; Morehouse, No. 511,860, January 2, 1894; Morehouse, No. 543,101, July 23, 1895; Huttenbach, No. 553,678, January 28, 1896,—and the following British patents: Cooper, No. 110, January 3, 1888; Coghill, No. 17,894, October 7, 1892; Strauss, No. 18,737, October 19, 1892; also duplicate German patents of Cooper and Strauss.

J. H. McElroy and Charles B. Collier, for appellant.

C. L. Sturtevant and Taylor E. Brown, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

Each of the devices in suit is of the well-known general class of temporary binders for books or files of loose leaves, whereby the leaves are, "in effect, permanently bound, but any leaf can be removed, reinserted, or replaced at any desired point." This fundamental feature is old in the art, and so are the general means employed, of back pieces with associated posts which enter through or engage with the leaves in various ways to hold them in place, while permitting their removal or replacement as occasion requires. The addition of a locking mechanism to provide against unauthorized interferences is not only an obvious expedient, but is shown as well in prior devices. Aside from the peculiar construction of the telescoping posts, which

serve both (1) to connect the back pieces and permit their movement "towards and from each other," while preventing complete separation, and (2) to preserve constant co-operation and engagement with the notched leaves, no element of the appellant's combination is new in itself, nor presents a new use of any old element. Thus back pieces, connecting and co-operating posts, both plain and telescopic, and leaves with perforations, notches, or broken outline, to make them "removably secured" in the binder, are each shown in like use in analogous devices; and the locking mechanism in this patent is not only a familiar structure, but is identical with one previously employed by Leslie for like purpose, and in public use for more than two years prior to the present application. It is manifest that Leslie was not a pioneer in the art of so-called "loose-leaved binders"; that his advance in the art, through the structure and two-fold service of the posts described in the patent, is completely embodied in the first seven claims, of which no infringement is here alleged; and that the further claims in question, assuming their validity, can receive no broad construction, and surely no construction which would exclude use of the like structure as found in the same art. Indeed, the narrowness of the contention on the part of the appellant is thus assumed and stated by counsel in their brief:

"We are not contending for a broad construction that would cover, or be anticipated by, any structure that merely shows a pair of back pieces connected by rigid posts, which are expansible, but not entirely separable, and which posts co-operate with notches in the leaves, merely to determine the position and location of the leaves, and not to prevent their removal, because such a construction is admittedly shown in the Waide patent, No. 484,349. What we are contending for has been set out previously, and is for a pair of back pieces connected by posts, so as to be capable of freely sliding back and forth (as distinguished from being screwed slowly back and forth), and which are so located and so co-operate with notches in the edges of the leaves as to hold the leaves in position, not merely determining their location, whether the back pieces are expanded or contracted. In other words, we are contending for a construction in which back pieces with telescoping and nonseparable posts are employed, co-operating with leaves, so that the leaves are securely held in position, not by any clamping action of the posts, but by reason of the engagement of the posts with the notches in the leaves."

The invention of the patentee, as recited in the specifications, "relates to that class of temporary binders known in the trade as 'perpetual ledgers,' and is designed to embody certain improvements whereby they may be made more compact and easily manipulated"; and "it is further designed to fasten the sheets thereof in the binder in such way that any sheet may be extracted from the binder without loosening the remaining sheets from the binder, and thereby possibly disarranging them." For the purpose indicated, Leslie devised a new form of two-part post to connect the back pieces, so arranged as to have a limited sliding movement one part upon the other, "whereby the binder may be expanded, but not separated"; and the posts are shaped "to co-operate with the notches or projections on the edges of the sheets," being triangular as shown in the patent, "so that any sheet may be extracted without freeing the others from the binder." In the ordinary form of telescoping the two sections of the post, the one of least diameter would not closely engage the notch in the leaf;

and, as such leaves would be liable to displacement, Leslie obviated the difficulty through the shape of his posts, whereby he made a sliding provision in the sections and preserved the post "in holding contact with the broken outline portions [of the sheet] in all positions." The provision thus made is clearly claimed and fully set forth in the first seven claims of the patent, of which infringement by the appellee is not alleged. The advantage in the improvement for which the appellant contends, if fully conceded, is wholly attributable to this form of post co-operating with the old elements. Substituting the new form for the post shown in various elder devices, and combining it with the old elements found in one and the other, the new combination furnished an improved binder. In the language of the specifications, it was "made more compact and easily manipulated"; and it certainly operated more readily and effectively than the two-part telescoping posts and screw device shown in Waide's patent, No. 484,349, which is, perhaps, the closest prototype of the Leslie form of post. This means, however, is not entitled to consideration as a pioneer invention in the sense of the patent law. It was a mere advance in a line marked out by numerous inventions,—a useful step, whereby the binder was manipulated with more convenience and speed, and with less liability to displace the leaves, and the desired removal or replacement of leaves was readily accomplished; obtaining a better result than by the old devices, but not essentially new. Thus the feature of removability and reinsertion of the leaves is expressly shown in several of the prior patents, and in the devices of Leslie in use for more than two years before his application for a patent; and the testimony of the inventor, Leslie, on behalf of the appellant, that he knew of no prior binder with such feature, and that he considered his "invention broad enough to cover any binder having this characteristic," is evidently founded on a misunderstanding. Applying the excellent definition stated by Mr. Justice Bradley in Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1054, it was not the case of an inventor who "precedes all the rest, and strikes out something which includes and underlies all that they produce," and thereby "acquires a monopoly and subjects them to tribute"; but it is an instance of the gradual advance which "proceeds step by step, so that no one can claim the complete whole, and each is entitled only to the specific form of device which he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs." See, also, Duff v. Pump Co., 107 U. S. 636, 639, 2 Sup. Ct. 487, 27 L. Ed. 517; Boyd v. Hay-Tool Co., 158 U. S. 260, 267, 15 Sup. Ct. 837, 39 L. Ed. 973.

The new combination of the Leslie invention is distinctly set out, with the various elements embodied, within the first seven claims of the patent; the new form of co-operating post being the marked feature according to the fact. The subsequent claims, 8 to 13, inclusive, on which this action is founded, are general in terms concerning the back pieces and co-operating posts, without limitation as to form. They differ in the description of the sheets, mentioned in some of the claims in mere general terms, and in others as notched or "having a broken outline," and three of the claims contain general

mention of a locking mechanism, while this feature is omitted in the others. Each claim refers to the effect produced of permitting the withdrawal of any sheet without freeing the others from the post or binder; but the means of co-operation for that purpose, consisting of a notch or "broken outline" on the side edges of the sheet, is likewise shown in prior patents,—notably in Paxson's No. 283,653 (1883) and in the British and German patents of Strauss (1892). These general claims, as a whole, are aptly described by Mr. Wiles, the expert examined on behalf of the appellant, in his description of claim 13:

"In this claim, as well as in each of the five preceding claims, the elements are mentioned in general terms, the form of, the parts and the construction of the locking mechanism not being referred to as a limitation, and the form of the sheets being only limited by the descriptive statement that they are formed with broken outlines adapted to co-operate with the posts, in order that the posts may hold the sheets in place."

The contention on the part of the appellant for a construction of these claims is thereupon stated by the witness, in reference to claim 8, as follows:

"The terms of the claim are such as to include any combination comprising the back pieces, the telescoping posts, and the locking mechanism, provided the parts of the posts are held permanently in their co-operating relation, no matter what the form of the posts or the construction of the locking mechanism may be."

And subsequently occurs the further statement that the particular locking mechanism is not an essential feature, and "any mechanism which serves to hold the back pieces rigidly in their adjusted positions" would be considered a locking mechanism, "so long as it allows the binder to expand without becoming separated."

Of this contention it is sufficient to remark that the claims so broadened in their scope would conflict with numerous devices shown in the prior art, as indicated above; and while infringements of the terms by the appellee would thus appear, the claims would not sustain an action, being too broad, and hence invalid. On the other hand, with the claims construed in conformity with the specifications, and thus limited, as the authorities require, to the specific device set forth, the actual invention can be protected without interference with the structures which are open to all; and in such view it remains only to ascertain whether the appellee so infringes.

In common with the Leslie patent, and with its predecessors as well, the Hoffmann combination has the four elements of (1) back pieces, (2) connecting telescopic posts, co-operating with (3) a cut in the side edges of the sheets, and (4) a locking mechanism.

1. The back pieces are unquestioned, as of the common type.

2. The posts are represented by so-called "vertical casings." chambered one within the other, open on one side, and connected, respectively, with the back pieces at either end, so that they slide telescopically, to permit expansion and contraction of the binder; and these casings are adapted both to protect and engage "the rear edges or projections on the rear part of the leaves." They differ from the Leslie post in their simplicity, and in the absence of any means to prevent separation of the back pieces, which is made distinctive in the Leslie post. Aside from this departure in the function of the post,

the difference in the form and mode of operation is more marked than that between Leslie's structure and those of the prior art; for instance, as shown in the Waide telescopic post (No. 484,349), or that of Morehouse (No. 464,731), in the Strauss British patent, and in the Leslie exhibit prior device.

3. The "broken outline" in the edge of the sheet in the appellee's device differs from that of Leslie merely to conform to the difference in the shape of the co-operating casings or post; but the exact triangular cut of Leslie is shown in the same relative position in the Strauss British patent of 1892, and an equally analogous provision appears in Paxson's patent of 1883 (No. 283,653) and in Waide's patent of 1892 (No. 484,349).

4. In the patent granted to the appellee a locking mechanism is placed centrally between the posts, as in the Leslie patent; but it is of different construction, and not made automatic by the use of a spring, as shown in the Leslie lock. The function is identical, as it well may be wherever a lock is required; and, moreover, the Leslie lock is a mere duplication of his prior device. In the structure as manufactured by the appellee, this lock is so far changed that it serves to hold the back pieces from separation, and thus supplies the want of such provision in the mechanism of the posts. This provision is named by the experts on behalf of the appellant as "a third telescoping post, midway between the ends," and stress is placed upon this device as performing the same function claimed for the Leslie telescopic posts in that regard, although obviously differing in the means employed, which is quite analogous to that shown in Waide's patent, No. 484,349. It was, however, clearly open to the appellee, whenever it seemed desirable to hold the back pieces from separation, to adopt a simple expedient to that end, provided the specific means devised by the appellant was not so taken. A function not being patentable, the mere fact of the performance of this function by the new means operating in a new way cannot serve constructively to make it an infringement of the means not used, where the invention is of the limited character shown in this patent.

Paraphrasing the apt remarks which conclude the opinion by Mr. Justice Shiras in Boyd v. Hay-Tool Co., 158 U. S. 260, 267, 15 Sup. Ct. 837, 39 L. Ed. 973, if the patent in suit contained an invention entirely new, and first adapted to the ends sought, the differences shown in the appellee's device and patent might be regarded as formal and evasive; but coming, as Leslie did, in the train of the numerous inventors that had preceded him, we must conclude that he is entitled only to the specific device shown, and this is not found in the appellee's structure. Consequently no infringement is shown. The applications for both patents were pending in the patent office at the same time, and the decision of that office that no interference was found in the claims on the part of the appellee, and the subsequent grant of both patents, with the modifications in the Leslie claims as shown in the record, are strongly corroborative of this view of noninfringement; and, upholding such view, it is unnecessary to pass upon the question of the validity of the claims in suit. The decree dismissing the bill for want of equity is affirmed.