## FORE ELECTRICAL MFG. CO. et al. v. ST. LOUIS ELECTRICAL WORKS et al.*

(Circuit Court of Appeals, Eighth Circuit. March 25, 1922.)

No. 5948.

1. **Patents ⟜328—1,239,249, for improvement in rectifiers of alternating current, not infringed.**

The Ballman Patent, No. 1,239,249, for an improvement in rectifiers of an alternating electric current, *held* not infringed by the device covered by the Wehmeier patent, No. 1,247,759, the proof not showing that the means and manner of accomplishing the result are equivalents, or the mode of operation the same.

2. **Patents ⟜112(3), 312(1)—Presumed valid, and burden on plaintiff to show invalidity of defendant's patent claimed to infringe.**

In a suit for infringement of a patent by a device manufactured under a subsequent patent, defendant's patent is presumptively valid and noninfringing, and the burden is on plaintiffs to overcome the presumption.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by the St. Louis Electrical Works and others against the Fore Electrical Manufacturing Company and others. From a decree for plaintiffs (267 Fed. 440), defendants appeal. Reversed, with directions.

Rodney Bedell and F. R. Cornwall, both of St. Louis, Mo., for appellants.

John H. Bruninga, of St. Louis, Mo., for appellees.

Before LEWIS, Circuit Judge, and TRIEBER and POLLOCK, District Judges.

LEWIS, Circuit Judge. [1] Each of the parties held a patent for improvement in rectifiers of an alternating electric current. Ballman's 1,239,249 belongs to appellees, plaintiff below, and is an earlier issue than Wehmeier's 1,247,759, which is owned by appellants, defendants below. Neither was a pioneer. The selection and storage of a unidirectional current from an alternating current, called rectification, was old in the electrical art. Ballman's application was first, but Weh-

meier's had been pending and under consideration by the examiner in the Patent Office for more than a year before Ballman's patent issued. The beneficial purpose of the structure is the charging of a battery, and the like, but the patented improvement in each related only to means to be employed in closing and opening the contacts with a vibratory switch, so that the selected impulse would pass through the battery and the contrary impulse would be cut out. Each made and sold rectifiers having the improvement called for in the respective patents, but the appellees claim that the improvements in the two are equivalents structurally, mechanically, electrically and functionally, that they operate in the same way and achieve the same result, and the difference between the two, if any, is only colorable. On this they sued for and obtained a decree for an injunction, on the ground of infringement; from which this appeal.

Points common to both, about which there is no controversy, are these: The means used by both to close the switch on the contacts, thus letting the selected impulse of the alternating current through the battery, is magnetism; and as this magnetic force is withdrawn or sufficiently reduced, the switch opens on its spring and the contacts through which the selected impulse passes through the battery are released, thus excluding the opposite current impulse. The switch is pivoted at one end and carries an armature intermediate its ends, positioned to complete the magnetic circuit, thus raising the switch against the tension of its spring and closing the contacts at the open end, as desired. Also, the means used by each to close the switch requires both a permanent magnet and an electro-magnet.

There is quite a difference between the patents in the physical relation of the electro-magnet to the permanent magnet, and to the switching armature. Another physical difference is in the shape of the permanent magnet. The differences are these—to make up Ballman's rectifier, take a magnet of the common horseshoe type, shorten one leg, bend the short leg at a right angle directly toward the long leg, leaving an air gap or open space between the end of the bent leg and the long leg. This is Ballman's permanent magnet. Fasten a soft iron core, placed parallel to the long leg, to the bent leg immediately under the angle, and around the core an alternating current winding. This is Ballman's electro-magnet. To make up Wehmeier's rectifier, take a magnet of the common horseshoe type, its legs of equal length and unchanged in shape. This is Wehmeier's permanent magnet. Place a soft iron core between the legs of the permanent magnet, near their ends or poles, and around the core an alternating current winding. This is Wehmeier's electro-magnet.

We pass now from differences in structure to the question as to whether there be difference in operation or function of the two devices. These accepted facts will be borne in mind. The alternating current winding around the soft iron core in each device sets up an impulse in the electro-magnet, first in one direction and then in the opposite, changing in impulse with the alternating current, and if both impulses are permitted to pass into the permanent magnet the latter

will cease to function, because magnetic flux continues in one direction, presumably from pole to pole and around the yoke of the magnet, thus closing the circuit. Ballman knew the field was narrow. He says so in his specification, and states the problem which he was attempting to solve thus:

"Vibrating rectifiers, as now constructed, utilize a magnet of constant polarity, and provided with an alternating current winding for superimposing on the constant flux an alternating flux which is in step with the current to be rectified. There are two general types of these rectifiers. In one of these types the constant flux is set up by a direct current winding in circuit with the battery to be charged, the magnet core being, in this case, of soft iron. This construction is, however, open to the objection that, where the battery to be charged has not a sufficient residual charge to effect the alternating flux sufficiently to produce synchronous operation in the proper direction the battery is liable to receive current in the wrong direction. In another type, the magnet is a permanent magnet and the constant flux is set up by the permanent magnetism. While this construction obviates the objection to the battery excited magnet construction, the passage of that component of an alternating flux which is opposite to the permanent flux, through the entire magnetic circuit of the permanent magnet will tend to demagnetize this permanent magnet and, therefore, vary the value of the constant flux and affect the permanency of the magnet.

"Some of the objects of this invention therefore are, to construct a rectifier system which is permanent and uniform in its action, which is arranged to be connected to the direct current load without liability of a reversal of current, which has a wide range of frequency, and in which the sparking is reduced to a minimum.

"Other objects are, to provide a rectifier which is simple in construction, effective in its operation, and cheap to manufacture."

With this in mind he attempted to preserve his permanent magnet and operate the switch with a small part of the main magnetic flux, plus the alternating flux in the electro-magnet. So that the theory of his patent, confirmed and fortified by expert testimony, is that the main path of the permanent magnetic flux is around the yoke of his magnet, down the long leg to and across the air gap to the short leg, but that owing to the resistance of the air gap a small part of this flux continues down the long leg, through the armature and up the electro-magnet. This he denominates a leakage or shunt path of the magnetic flux of the permanent magnet. It is not of sufficient attractive force to close the switch on the contacts until a flux passing in the same direction is set up in the electro-magnet, and thus with the alternating impulse of that flux the switch closes and then opens on its spring. It thus appears to us that the switch is chiefly operated by the electro-magnet. Whereas, the theory of Wehmeier's patent, confirmed and fortified by expert testimony, is that there is no shunt or leakage path in his device and that the switch is operated wholly by the flux of his permanent magnet, that the soft iron core between the legs of his magnet, and near their ends, is a bridge or path for the flux of the permanent magnet, although he concedes that a part of that flux passes down to the end of the leg, through the armature and up the other leg, but claims that when an impulse is set up in the electro-magnet in opposition to the flux in the permanent magnet, its resistance on the bridge to the flux of the per-

manent magnet causes the permanent magnetic flux to pass down the leg and through the armature, thus closing the switch with the flux of the permanent magnet, and that the electro-magnetic flux does not co-operate in attracting the switching armature, except as it is utilized to cause the permanent magnetic flux to perform that function. On this point Wehmeier's claims call for means (electro-magnet) for diverting the magnetic circuit of the permanent magnet or varying the path of the magnetic field of the permanent magnet relative to the vibratory switch. On the subject of equivalents and differences that are merely colorable, this court, in James Heekin Co. v. Baker, 138 Fed. 63, 70 C. C. A. 559, said:

"Identity of result is, however, not a sufficient test of infringement. There must also be substantial identity of the means and manner of its accomplishment. The appellant's invention being obviously not a pioneer, but only an improvement upon the prior art, its claims cannot be given a liberal interpretation; but there is yet a right to a reasonable range of equivalents, measured by the character and extent of the improvement, and infringement cannot be avoided by mere colorable modifications of some of its elements, not essentially varying its principle or mode of operation."

And again, this court held in Sander v. Rose, 121 Fed. 835, 58 C. C. A. 171:

"When two inventors have each adopted the substantial features or elements of an earlier invention making, respectively, but slight changes in or improvements upon the earlier device, each will be limited to his own specific form of device; and, if there are differences therein, neither device will be held to be an infringement of the other."

[2] Presumptively, appellants' patent is valid, and does not infringe, Boyd v. Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973, and the burden was on the appellees to overcome that presumption. Expert witnesses for the two parties seem equally competent and well informed,—for appellees that the two devices are in every way equivalents, for appellants that they are not so in any respect. We are not convinced that the means and manner of accomplishing the result are equivalents, nor that the mode of operation of the two does not vary in principle, under the proof adduced; but rather that there is material difference, structurally and functionally, in the two devices.

Reversed with directions to dismiss the suit at appellees' costs.