## HOPPENSTAND v. MACK–INTERNATIONAL MOTOR TRUCK CORPORATION.

### No. 3075.

District Court, W. D. Pennsylvania.
April 17, 1936.

M. A. Keller and Reed, Smith, Shaw & McClay, T. W. Pomeroy, and Oliver Evans, all of Pittsburgh, Pa., for plaintiff.

Stebbins, Blenko & Parmelee, and Clyde Strickland, all of Pittsburgh, Pa. (Whittemore, Hulbert, Whittemore & Balknap, Clarence B. Zewadski, and Chas. G. Randall, all of Detroit, Mich., of counsel), for defendant.

McVICAR, District Judge.

This is a suit for infringement of a patent wherein the plaintiff seeks an injunction and an accounting. The answer raises the usual defenses of invalidity and noninfringement. The court, after hearing and consideration, makes the following findings of fact and conclusions of law:

### Findings of Fact.

1. Plaintiff, David Hoppenstand, is a citizen of the United States, residing at Glenshaw, Pa. Defendant, Mack-International Motor Truck Corporation, is a New York corporation having an office and place of business at Pittsburgh, in the Western District of Pennsylvania.

2. Plaintiff is the owner of the patent in suit, No. 1,933,908, which relates to gear shifting mechanism. The application for the patent was made March 7, 1932. The patent was granted November 7, 1933.

3. The patent in suit states in relation to the object of the invention that:

"It is the principal object of the invention to provide a manually operated control means for automatically shifting the speed changing gears of the transmission mechanism and which may readily be applied to vehicles already in use, without necessitating any material change or alteration in their existing construction and which in the building of new vehicles may be installed as a part of the steering column assembly.

"More specifically stated, the present invention resides in the provision of novel gear shifting mechanism that may be associated with the standard, or common types of speed changing transmission systems, now universally used in automobiles, and which may be operated by the rotative movement of a crank arm or lever adjacent to the steering wheel to effect the proper shifting of gears for any one of the desired speeds. There being, for convenience, a dial associated with the control arm on which are marked the various positions to which the control arm should be adjusted to effect the shifting of gears for any of the speeds possible.

"Another object of this invention resides in the special design and use of a compound cam associated with the controlling means of the gear shifting rods."

4. Plaintiff relies on claims 2 and 3 of the patent in suit, which read:

"2. The combination with a change speed transmission mechanism including a pair of gear shifting rods that are longitudinally movable in opposite directions from neutral position, of a control means therefor comprising a longitudinally movable and rotatable shaft, a lever arm fixed thereon and selectively engageable, by longitudinal adjustment of the shaft, with one or the other of said rods, a cam, a follower fixed to the shaft and operatively engaging the cam, a manually adjustable means for rotating the cam to effect longitudinal shifting of the cross shaft and a rotative movement thereof

for effecting movement of a gear shifting rod."

"3. The combination with a change speed transmission mechanism including a pair of gear shifting rods that are longitudinally movable in opposite directions from neutral position, of a control means therefor comprising a cross shaft mounted for longitudinal shifting and rotatable in opposite directions from neutral position, a lever arm fixed to the shaft and selectively engageable, by longitudinal adjustment of the shaft, with one or the other of said rods, a compound cam, a yoke fixed to the shaft and embracing the cam, a manual control for rotating the cam thereby to effect longitudinal adjustment of the cross shaft and its rotative movement for selectively operating either of the gear shifting rods."

5. The Hoppenstand device, as shown in Fig. 1 and its associated Figs. 2, 3, 4, 4a, and 5, is the device upon which claims 2 and 3 of the patent in suit are based.

6. Figs. 1, 2, 3, 4, 4a, and 5 of the patent in suit disclose a conventional form of change speed gear mechanism of the selective type. This gear shifting mechanism has the usual shifting rods, either one of which may be engaged by a lever arm attached to a longitudinally slidable and rotatable cross shaft disposed at right angles to the shifting rods. The opposite end of the cross shaft is provided with a yoke fixed thereto and having depending cam follower fingers thereon which engage the slot of a rotatable compound cam. The specific compound cam mechanism comprises a cam slot disposed around the periphery of the cam in a "zig-zag" path. The cam slot is also varied in depth. By reason of the particular construction of this slot, by simple rotary movement of this compound cam, the cam followers, by following the "zig-zag" path of the cam, rock the cross shaft, and, by coacting with the bottom of the cam slot, slidably shift the cross shaft. When the cross shaft is slidably shifted, it causes the lever arm to select either of the shiftable rods, and, when the cross shaft is rocked, it moves the selected rod longitudinally to mesh the selected gears.

This compound cam is rotated by the operator by means of a rotatable lever arm mounted on the steering wheel and which is operatively connected with the compound cam.

The operator can only rotate the hand lever in a simple circular path, either clockwise or counter-clockwise, to obtain the gear ratio desired. This rotary movement of the hand lever is transmitted to the compound cam which rotates in like manner. By this mechanism Hoppenstand has transformed the conventional selective transmission shown in his drawings, into a progressive transmission.

7. The patent in suit further states:

"The various gears of this transmission system would be proportioned to provide the desired speed changes and are not described in detail since the mechanism within the housing 11 forms no material part of the present invention, except in its combination with the mechanism which actuates or controls it, this latter mechanism which I term the control mechanism, forming the basis of the invention herein claimed."

8. The patent in suit is without commercial use or success. It has been in litigation for about a period of two years.

9. The defendant has sold in this district passenger cars which contain the structure disclosed and described in Thomas patent No. 1,947,234.

10. Thomas' gear shifting mechanism comprises a cross shaft extending into the transmission casing at right angles to the gear shifting rods and is provided on the transmission end with a pair of gear segments, one of which is secured to the cross shaft and the other of which is free to rotate thereon, for respectively engaging the gear shifting yokes. On the other end of the cross shaft, outside the transmission casing, Thomas provides a gear segment secured to the cross shaft and having upstanding flanges' or "sideboards" between which the teeth of the gear segment are located. Positioned between these "sideboards" is a straight rack bar having teeth engaging the teeth of the segment. This straight rack bar is rigidly secured to the end of a flexible shaft capable of being rocked and also slidably shifted by means of a T-shaped operating handle secured to it and mounted on the dash. By rocking the handle, the operator causes the flexible shaft to rock, which in turn causes the straight rack bar to rock and strike the "sideboards" of the segment, which in turn causes the cross shaft to move longitudinally, thereby selecting the gear ratio de-

sired. By then pulling the handle outwardly, or pushing it inwardly, the operator causes the flexible shaft to move longitudinally, thereby causing the straight rack bar to move longitudinally and causing its teeth, which are in mesh with the teeth of the segment, to rotate the segment which in turn rotates the cross shaft, thereby placing the selected gears in mesh.

11. It is necessary to move defendant's operating handle in two distinct and different paths at right angles to each other, in order to perform all of the required manual gear shifting functions, because the Thomas structure has retained the selective features of the transmission.

12. March 30, 1932, Thomas and two others filed their application in the Patent Office for Letters Patent on the Thomas device. This application was abandoned. December 27, 1932, Thomas and one other person filed another application for the same device. Letters patent were issued, No. 1,947,235, February 13, 1934. The application for the patent in suit and the Thomas application were pending in the Patent Office at the same time.

13. The "transmission" of an automobile is that mechanism comprising gears and associated parts, interposed between the clutch and rear drive shaft of the automobile, whereby the motion of the engine shaft will be transmitted to and drive the drive shaft and whereby the motion of the engine shaft will be translated in terms of speed and leverage or torque in various degrees or ratios to the drive shaft, for starting and normally propelling the automobile.

14. To effect changes in speed and torque relative to the speed and torque of the motor shaft, the parts of the transmission mechanism must be adjusted or "shifted" to effect desired gear ratios.

15. The standard practice of "shifting" or adjusting the gears of the transmission employs a gear shift lever which extends upwardly from the floor of the automobile in the central forward position of the front compartment of the machine.

16. In shifting of gears the clutch pedal of the automobile is always depressed to free the transmission gears from active connection with the engine shaft, so that a gear or gears may be moved by the shifted mechanism (gear shift lever) out of or into mesh with another or other gears.

17. There are two classes of gear shifting transmissions, progressive and selective. A progressive sliding gear transmission has been defined as one in which the gears of the transmission are arranged in spaced alignment so that, at times when it is desired to pass from one speed ratio to a nonadjacent speed ratio, any intermediate speed ratios must be actually assumed by the gears and then unmeshed to pass into the desired final position. A selective sliding gear transmission has been defined as one that is so arranged that the operator could move the slidable gears from a single neutral location to immediately mesh with those gears desired, without having to become operatively connected and disconnected with any other set of gears.

18. The patent in suit provides for a progressive gear shifting transmission system. The Thomas patent provides for a selective system of gear shifting transmission.

19. The patent in suit is not anticipated by the publications or patents cited by the defendant.

20. The patents to Foster No. 1,488,592 and the British patent No. 322,599 to Barford are more similar to defendant's structure than the structure of the Hoppenstand patent in suit.

21. The patent to Foster discloses a control shaft which must be both rotated and reciprocated, to selectively operate the transmission gearing. The end of this control shaft which operates the cross shaft is provided with a cam member which, when rotated, engages cam followers located on the cross shaft. This cross shaft extends into the transmission casing, as is the general case, and must be moved endwise to move a lever arm thereon into the proper position for shifting the desired gears. When the control shaft is pushed or pulled, a tooth on a yoke member mounted on the control shaft engages a co-acting rod or tooth mounted between two levers which are secured to the cross shaft. As the control shaft is slidably shifted back and forth, it rocks the levers, thereby causing the cross shaft to rock, placing the selected gears in mesh.

22. This British Barford patent discloses a construction for selectively oper-

ating the transmission gearing, comprising a control shaft which must be pushed or pulled and rotated in two distinct movements at right angles to each other, in order to selectively operate the transmission gearing. The end of the control shaft which operates the cross shaft is provided with a compound toothed wheel comprising a number of parallel disks which are spaced a suitable distance apart axially, and through which are passed a number of cylindical pins that form an annular series of circular teeth between the disks.

Barford's control shaft with the compound toothed wheel mounted axially thereon is positioned at right angles to the cross shaft, and its compound toothed wheel meshes with a second compound toothed wheel comprising a number of paralleled toothed gears spaced apart and mounted axially on the cross shaft. When the operating lever is manipulated to rock the control shaft, the pins of the compound toothed wheel coact with the sides of the toothed gears of the compound toothed wheel mounted on the cross shaft, to slidably shift the cross shaft to effect selection of the desired gears. When the operating lever is manipulated to slidably shift the control shaft, the compound toothed wheel mounted thereon engages the teeth of the gears of the compound toothed wheel mounted on the cross shaft, thereby causing the rotation of the cross shaft to effect the gear shift. When this movement takes effect, the two compound wheels act in the nature of a rack and gear in the same manner as does defendant's device.

23. The British Barford patent is clearly understandable by those skilled in the art, and discloses an operative structure.

24. Defendant's structure does not infringe claims 2 and 3 of the patent in suit.

### Conclusions of Law.

1. Claims 2 and 3 of the patent in suit are valid.

2. Claims 2 and 3 of the patent in suit are not infringed by defendant's structure.

3. The bill should be dismissed at the cost of the plaintiff.

### Opinion.

Defendant admitted in his argument, orally and in writing, that claims 2 and 3 of the patent in suit are valid. The issue for the court's decision is whether defendant's structure infringes said claims.

■ The application for the patent in suit and the application for the Thomas patent were pending in the Patent Office at the same time. The presumption, therefore, is that the device provided for in the Thomas patent does not infringe the device provided for in the patent in suit. In Boyd v. Janesville Hay-Tool Company, 158 U.S. 260, 15 S.Ct. 837, 39 L.Ed. 973, it is stated:

"As both applications were pending in the patent office at the same time, and as the respective letters were granted, it is obvious that it must have been the judgment of the officials that there was no occasion for an interference, and that there were features which distinguished one invention from the other. In American Nicholson Pavement Co. v. Elizabeth, 4 Fish.Pat.Cas. 189, Fed.Cas. No. 312, Mr. Justice Strong said: 'The grant of the letters patent was virtually a decision of the patent office that there is a substantial difference between the inventions. It raises the presumption that, according to the claims of the later patentees, this invention is not an infringement of the earlier patent.' It would also seem to be evident that, as the purpose of the inventions was the same, and as the principal parts of the respective machines described were substantially similar, it was also the judgment of the office that the distinguishing features were to be found in some of the smaller, and perhaps less important, devices described and claimed. Burns v. Meyer, 100 U.S. 671 [25 L.Ed. 738]."

■ The patent in suit was granted November 7, 1933. It has not gone into commercial use nor has it had commercial success. The automobile industry is alert to procure improvements. The construction of the claims involved should receive a more restricted interpretation as compared with claims of a device of established commercial value.

Defendant's structure follows closely the American Foster patent and the British Barford patent, both of which are prior in time to the patent in suit and the Thomas patent. The structures and methods of operation of the devices described in the Foster and the British patents are described in findings of fact Nos. 21 and 22.

The structure and method of operation of the gear shifting mechanism of the patent in suit is stated in findings of fact Nos. 5 and 6, and of defendant in findings of fact Nos. 10 and 11. The patent in suit provides for a progressive system of changing gears. The Thomas patent provides for a selective system of changing gears. Claims 2 and 3 of the patent in suit provide for a single compound cam so constructed that it is simply rotated to transmit a reciprocating and rocking movement to the cross shaft. The Thomas structure requires that two distinct movements must be transmitted to the gear shifting mechanism in order to cause the cross shaft to slidably shift and rock.

We conclude that by reason of the presumption that the Thomas patent does not infringe the patent in suit, the lack of commercial use of the patent in suit, that the Thomas structure closely follows the earlier Foster and the British Barford patents, the difference in the system of changing gears between the patent in suit and the Thomas patent, and the difference in structure and the mode of operation of the devices provided for in said patents, that defendant's structure does not infringe claims 2 and 3 of the patent in suit.

Let a decree be prepared and submitted in accordance with the foregoing findings of fact, conclusions of law, and this opinion.