UNION SPECIAL MACH. CO. v. SINGER MFG. CO.

(District Court, D. New Jersey. May 18, 1914.)

No. 5702.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—IMPROVEMENT IN SEWING MACHINES.

The Woodward patent, No. 890,582, for an improvement in sewing machines, relating to mechanism for changing from a straight-away to a zigzag or overedge stitch, and vice versa, at the will of the operator, and without stopping the machine, in view of the prior art, is entitled to only a very narrow construction; as so construed, *held* not infringed.

2. PATENTS (§ 11*)—RIGHT TO PATENT—FUNCTION OF MACHINE.

No patent can validly issue for the mere function or abstract effect of a machine, but only for the mechanism which performs or produces it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 9; Dec. Dig. § 11.*]

3. PATENTS (§ 157*)—INFRINGEMENT—PRESUMPTION FROM GRANT OF SECOND PATENT.

There is a presumption arising from the grant of a patent that the invention covered by it differs substantially from any other covered by a prior patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. § 157.*]

In Equity. Suit by the Union Special Machine Company against the Singer Manufacturing Company. On final hearing. Decree for defendant.

Joseph C. Fraley, of Philadelphia, Pa., for complainant.
Gifford & Bull, of New York City, for defendant.

BRADFORD, District Judge. [1] The Union Special Machine Company, the complainant, has brought its bill against the Singer Manufacturing Company, defendant, alleging infringement by the latter of letters patent of the United States No. 890,582, granted June 9, 1908, to the complainant, then bearing the name of Union Special Sewing Machine Company, as assignee of Russel G. Woodward, for Improvements in Sewing Machines. The patent in suit contains 59 claims; but the charge of infringement was on the hearing restricted to claims 27, 39, 40, 41, 42, 43, 44, 46, 53, 54, 55, 56 and 58. The two substantial questions in the case relate, (1) to the validity of those claims, and (2) to their infringement. The patent in suit, if valid, by no means embodies a primary or broad invention. The patentee in the description states:

"My invention relates to certain improvements in sewing machines, and has for its principal object to construct a machine capable of forming both straight-away and zig zag or over edge stitches, in which the character of the stitch may be changed at the will of the operator. In Letters Patent granted to me on the 23d day of February, 1904; No. 753,187, I have shown, described and claimed a machine of a similar type, and the present invention consists in certain features of construction and arrangement of operating parts, whereby the change from zig zag to straight-away stitching and vice versa, can only be accomplished while the needle is descending, and about to enter the goods, this being accomplished on the left hand stitch when the zig zag mechanism

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is at work. This machine, as well as the machine illustrated in the aforesaid patent, was designed principally for use in connection with the closing of the uppers of shoes at the rear portion, the object being to first sew the two superposed edges of the uppers together a short distance by a line of straight-away sewing, and then by a line of zig zag stitches, so that when the pieces of leather are spread out flat there will be no ridge upon the inside of the shoe, except at the very top of the rear part. The said strip is then applied in the usual manner over the upper and counter of the shoe. The seam adapted to be sewed on this machine, forms the subject-matter of another application filed October 30, 1902, Serial No. 129,383. In addition to the general object of the invention above stated, further objects are to so construct and arrange the mechanism for changing the character of the stitch as to render it in great measure self-adjusting, so that any premature movement of that portion of the stitch-forming mechanism adjusted may be prevented, the movement at either change being so governed by the mechanism as to at all times produce a perfect stitch at the changing-point. Other objects are to so construct the apparatus that the change of stitch may be made by the operator by a single movement, without stopping the machine; to provide for the positive operation of the parts, and for the adjustment of the various parts of the mechanism, and the renewal of adjustment of those portions subject to the greater wear. The features of the invention made by me having been set forth in the former patent, the present invention comprises, in a somewhat restricted sense, certain improvements therein, adapted to bring the machine to a greater degree of perfection, both in construction and mode of operation, or perhaps in one sense, the invention may be stated to consist in combining with an overseaming machine adapted to have a zig zag movement imparted to the needle, mechanism for imparting such movement, with means for throwing the same into and out of operation at the will of the operator, said means including locking devices which alternately act at the will of the the operator, to hold in engagement or release from engagement the zig zag needle mechanism from its operative connections with the driving shaft. Furthermore, the invention consists in combining with the usual zig zag mechanism of a sewing machine, with a driving shaft for operating it, of connections between the driving shaft and the zig zag mechanism, including two locking devices operable at the will of the operator, one of which locks the zig zag mechanism to the connections between it and the driving shaft, and the other of which, as said first locking device is thrown out of action, operated to clutch the zig zag mechanism and prevent any accidental swinging of the needle bar gate or frame. The above statements of the features included in the present invention relate particularly to the application thereof to a machine of the special type referred to, but it will be understood that so far as the feature of throwing into and out of operation a mechanism or member is concerned, the invention may be applicable to other uses, where it is desired to suspend at desired intervals and at the will of the operator, the action of some part of the machine, as for example, a ruffling blade, trimmer, feeding device, etc., or the same shifting mechanism might be arranged to be automatically operated at certain predetermined intervals to cause a member to be thrown into or out of action. The invention therefore is not limited solely to the application to the particular machine illustrated, but may be said in a broad sense, to consist of a sewing machine having a moving member whose action it is desired to suspend at intervals, of means for causing said suspension or operation, including locking devices for holding in engagement or out of engagement, the said member and its operative connections. * * * It will be understood that various minor modifications and changes in the construction of the parts of this machine may be made, without departing from the spirit of the invention."

The claims of the patent in suit relied on by the complainant are as follows:

27. In a sewing machine adapted for straight-away or zig zag stitching, a driving shaft, the combination of the needle bar and means for reciprocating it vertically, means for vibrating it laterally including a vibrating member,

connections between the vibrating member and the driving shaft, means for throwing said connections into and out of operation, and controlled by the operator, and a stop carried by a moving part of the machine mechanism for preventing complete movement of said controlling means, except at predetermined points; substantially as described.

39. In a sewing machine adapted for straight-away or zig zag stitching, the combination of a driving shaft, a needle, means for reciprocating the same vertically, means for vibrating the needle laterally, including a vibrating member, connections between the vibrating member and the driving shaft, controlling means for rendering the vibrations imparted through said connection ineffective, said controlling means being manually operated, and a stop carried by a moving part of the machine mechanism for preventing complete movement of said controlling means, except at a predetermined portion of the reciprocation of the needle.

40. The combination of a needle, complemental stitch-forming mechanism, means for vibrating said needle laterally to position the same for forming alternate stitches over the edge of the fabric, controlling means for rendering said vibrating means ineffective, whereby straight-away stitching may be produced, and means for preventing the operation of said controlling means when the needle is positioned for making the over edge stitches.

41. The combination of a needle and complemental stitch-forming mechanism, for producing straight-away stitching, means for vibrating said needle laterally, whereby alternating stitches are formed outside of the line of straight-away stitching, controlling means whereby said vibrating means may be rendered ineffective including a lever, a treadle connected to said lever, and means co-operating with said lever for preventing the operation of said controlling means when making stitches out of line with the straight-away stitching.

42. The combination of a needle, complemental stitch-forming mechanism, means for vibrating said needle laterally to position the same for forming alternate stitches over the edge of the fabric, controlling means for rendering said vibrating means ineffective whereby straight-away stitching may be produced, and automatic means for preventing the operation of said controlling means, when the needle is positioned for making the over edge stitches.

43. In a machine for straight-away and zig zag stitching, a needle, complemental stitch-forming mechanism, means for vibrating said needle laterally, manually controlled means for rendering said vibrating means effective to vibrate said needle, and automatic means operating upon the manually controlled means for causing said needle to form straight-away stitching when said manually controlled means is released, and means for preventing the operation of said automatic means when said needle is forming the stitches out of line with the straight-away stitching.

44. In a machine for straight-away and zig zag stitching, a needle and complemental stitch-forming mechanism, means for vibrating said needle to form zig zag stitches, a treadle, means intermediate said treadle and said vibrating mechanism including a lever, whereby the latter may be rendered effective or ineffective to vibrate the needle, and means co-operating with said lever for preventing the operation of said treadle except when said needle is in a predetermined position.

46. In a machine for straight-away and over edge stitching, a needle and complemental stitch-forming mechanism, mechanism for vibrating said needle to form the over edge stitching, controlling means for rendering said vibrating mechanism effective or ineffective, including a lever, a treadle connected thereto for operating the same to cause the over edge stitching to be effected, a spring for operating said lever to cause the straight-away stitching to be effected, and means for preventing the operation of said lever while the needle point is below the plane of the upper surface of the material during the formation of certain stitches.

53. In a sewing machine for straight-away and zig zag stitching, a needle, and complemental stitch-forming mechanism, means for vibrating the needle to form zig zag stitches, controlling means for rendering said vibrating means effective or ineffective, including a lever, a treadle for moving said lever in one direction, a spring for moving said lever in the opposite direction and

means for preventing the movement of said lever except at a predetermined time in the reciprocation of the needle.

54. The combination of a needle and complemental stitch-forming mechanism for producing straight-away stitching, means for vibrating said needle laterally whereby alternating stitches are formed outside of the line of straight-away stitching, controlling means whereby said vibrating means may be rendered ineffective, including a lever, a treadle for depressing said lever, a spring for raising said lever and means including a stop, carried by a moving part of the machine mechanism for preventing the operation of said lever except at a predetermined time in the reciprocation of the needle.

55. The combination of a needle, complemental stitch-forming mechanism, means for vibrating said needle laterally, controlling means for rendering the said vibrating means ineffective including a lever, a stop moving with said lever, and a member moving with the machine mechanism, and co-operating with said stop for preventing the movement of said lever except at a predetermined time in the reciprocation of the needle.

56. The combination of a needle, complemental stitch-forming mechanism, means for vibrating said needle laterally, controlling means for rendering said vibrating means ineffective, including a lever, a stop moving with said lever, a member moving with.the machine mechanism and co-operating with said stop for preventing the movement of said lever except at a predetermined time in the reciprocation of the needle, a treadle, means for connecting said treadle to said lever and for moving the same in one direction and a spring for moving the lever in the opposite direction.

58. In a sewing machine, a needle, means for reciprocating said needle, mechanism for vibrating the same laterally, said lateral vibrating means including a fork, means for vibrating said fork, a member connected to and moving continuously bodily with said fork and manually controlled means for rendering the movements of said member ineffective, whereby the lateral vibrations of the needle are suspended, and means for preventing the operation of the manually controlled means except at a predetermined time in the reciprocation of the needle.

These thirteen claims may be divided into two groups, one relating to the prevention of the shift or change from zigzag to straight-away or from straight-away to zigzag stitching when the needle is at the wrong stitch, and the other to the prevention of the shift from zigzag to straight-away stitching, or conversely, when the needle is in the work or material to be sewed. I do not find anticipation of any of the claims in suit unless given an inadmissible scope and liberality of construction. While the complainant is entitled to the advantage of the prima facie presumption of validity arising from the grant of the patent in suit there are good reasons why its claims should be narrowly construed. The prior art requires such a limited construction. Further, the patent in suit purports to be for improvements upon a sewing machine covered by patent No. 753,187, granted to Woodward February 23, 1904, in the description of which the patentee says:

"My invention relates to certain improvements in sewing machines, and has for its principal object to construct a machine capable of forming both straight-away and zig zag or over edge stitches where the character of stitch may be changed automatically. A further object is to so construct and arrange the mechanism for changing the character of the stitch as to render it in great measure self-adjusting, so that any premature movement of that portion of the stitch-forming mechanism adjusted may be prevented, the movement at either change, being so governed by the mechanism, as to at all times produce a perfect stitch at the changing-point. Further objects of the invention are to so construct the apparatus that the change of stitch may be made by the operator by a single movement, to provide for a positive operation of the parts, and for the adjustment of the various parts of the mechanism and

the renewal of those portions subjected to the greatest wear. The invention consists, primarily, of a sewing machine adapted for both zig zag and straight-away sewing, with means whereby either form of stitch-forming mechanism may be thrown into and out of action without stopping or retarding the action of the stitch-forming mechanism."

[2, 3] The patent in suit thus is for improvements upon improvements to sewing machines as theretofore developed and improved. Again, the claims in suit are in form and character largely functional. It has long been settled law with respect to machine patents that no patent can validly issue for the mere function or abstract effect of a machine, but only for the mechanism which performs or produces it. Corning v. Burden, 15 How. 252, 14 L. Ed. 683; O'Reilly v. Morse, 15 How. 62, 112, 14 L. Ed. 601. It is not the legitimate office of a patent claim to state merely a mechanical problem or function. It must also clearly indicate the mechanical means for its solution or accomplishment. Claims so functional in character and form as those in suit must be read in the light of the drawings and description of the patent and be closely limited to what is there shown and described. The alleged infringing machine was the invention of C. F. Gray. It is covered by patent No. 933,032, granted August 31, 1909. There is a presumption arising from the grant of this patent that the invention covered by it differs substantially from any other sewing machine covered by a prior patent, the application for which had been pending in the patent office before the grant of the later patent. Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973. Under the foregoing principles the machine of the complainant and defendant must be regarded as so distinguished from each other in details of construction and operation as to exclude infringement. Woodward states in the description of the patent in suit that under the invention covered by it the change from zigzag to straight-away stitching, and vice versa, "can only be accomplished while the needle is descending, and about to enter the goods." He has thus required as an essential feature of the machine of the patent in suit that the change from zigzag to straight-away stitching, and the converse, "can only be accomplished while the needle is descending." He has made this feature an essential element or characteristic of his patent monopoly. In the defendant's machine the change from one kind of stitch to the other certainly need not, and, as I understand the evidence, does not occur, while the needle is descending, but, on the contrary, while it is ascending. The following testimony of Arthur S. Browne, complainant's expert, is important in this connection.

XQ 7. At what stage in the excursion of the needle can the change from zig zag to straight-away stitching and vice versa, be accomplished in the defendant's machine, and at what stages can it not be accomplished?

A. As the exhibit machine now stands, the needle is substantially at its upper limit of movement when the change is made both from straight-away to zig zag stitching, and vice versa. It is possible that there may be a difference in adjustment in the exhibit as it now stands from when it was first received, because for the purpose of making the diagrammatic drawings it was necessary to remove the stop O to ascertain the way in which it is connected to the shaft D, and in getting these parts back there may have been some change in position; and if so, the timing would be slightly varied.

XQ 8. Would it make any difference to any of the testimony that you have

given, if the machine as sold by the defendant was adjusted so that the change from zig zag to straight-away stitching and vice versa was accomplished as the needle is rising, and after it has risen above the cloth?

A. No.

XQ 9. In the machine that has been introduced to represent the complainant's patent in suit, "Complainant's Exhibit, Complainant's Machine," at what stage of the excursion of the needle is the change from zig zag to straight-away stitching and vice versa accomplished?

A. As the needle is going down in making both changes.

XQ 10. About how far has the needle advanced on its downward stroke when the change occurs in complainant's machine?

A. A little over one-eighth of an inch. The total throw of the needle is about one and one-eighth inches.

XQ 11. What do you understand to be "the left-hand stitch," referred to in line 28, page 1, of the patent in suit? Whose left hand?

A. I understand it to be at the left hand of the person who faces the machine as shown in figure 1. It would be the position of the needle which is indicated in dotted lines in figure 1. This is the position the needle occupies during straight-away stitching.

XQ 12. If the defendant's machine as sold was adjusted so that the change occurred during the ascent of the needle after it left the goods, in what respect would its operation differ from the statement of the patent in suit, page 1, line 24, that "the change from zig zag to straight-away stitching and vice versa can only be accomplished while the needle is descending and about to enter the goods, this being accomplished on the left-hand stitch when the zig zag mechanism is at work"?

A. It would differ in the respect that the patent states that the change takes place while the needle is descending, while, on the contrary, in defendant's machine the change takes place while the needle is ascending. Also, in defendant's machine the change may take place while the needle is at the right during zig zag stitching. In such event, the action of the shifting mechanism is to shift the frame *C* (in which the needle bar reciprocates) so as to bring the needle to the left-hand position. This is another difference between defendant's machine and the quoted statement from the patent.

XQ 13. The difference mentioned in the last paragraph of your last answer is true with the defendant's machine in its present adjustment so as to make the change when the needle is substantially at its upper limit of movement; is that so?

A. Yes.

I do not deem it necessary to discuss other alleged points of infringement. Wholly aside from various questions raised by the counsel for the defendant as to the prosecution in the patent office of the application for the patent in suit, and sundry objections based upon alleged conduct of the complainant, I have reached the conclusion that the complainant has failed to prove infringement by the defendant of the claims or any of the claims in suit, and that, consequently, the bill of complaint must be dismissed with costs. A decree in accordance with this opinion may be prepared and submitted.