EAID et al. v. TWOHY BROS. CO. et al. *

(Circuit Court of Appeals, Ninth Circuit. February 7, 1916.)

No. 2589.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—CHOCK ATTACHMENT FOR CARS.

The McConnell patent, No. 901,815, for a chock attachment for log cars, is for improvements only, and in view of the prior art is limited to the precise devices shown and described. As so limited, *held* not infringed by the devices of the Chandler patent, No. 1,066,795.

Appeal from the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

Suit in equity by Clayton T. Eaid and Joseph A. McConnell against the Twohy Bros. Company, the Northwestern Equipment Company, and Elbert G. Chandler. Decree for defendants, and complainants appeal. Affirmed.

Stapleton & Sleight and Joseph L. Atkins, all of Portland, Or., for appellants.

William R. Litzenberg, of Portland, Or., for appellees.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

ROSS, Circuit Judge. The appellants were complainants in the court below in a suit for the alleged infringement of a patent issued in 1908 to the appellant McConnell—the alleged infringers operating under and in pursuance of a patent issued about five years thereafter to the appellee Chandler. McConnell declared in his patent, among other things, that his invention "relates to logging cars and the like, and more particularly to chock attachments designed to be secured upon a car for the purpose of holding logs or timbers against displacement upon the car. Another object is to provide an adjustable chock, which, when in operative position, is securely held in place and cannot be forced accidentally out of proper position. Another object is to provide novel means whereby chocks can be moved into lowered positions, said means being so disposed that there is no danger of the

released logs falling upon the operator. Another object is to provide simple means for detachably securing the attachment to a car. With these and other objects in view, the invention consists of certain novel features of construction and combinations of parts," afterwards described in the specifications; the patent concluding with 10 claims.

We see no merit whatever in the contention on the part of the appellants that the patent issued to McConnell was in any respect of a pioneer character, for the record discloses that years before patents had been issued to other persons having the same objects in view, as well as some similar features, and, indeed, that McConnell was compelled by the Patent Office to amend his claims in several respects in order to avoid anticipation and to secure a patent at all. The earliest patent found in the record was issued August 7, 1888, to one Wilbur, who declared therein:

"My invention relates to certain new and useful improvements in devices for holding logs or lumber upon a frame when it is desired in transporting, the same consisting in the construction and combination of the parts, as will be hereinafter fully set forth, and specifically pointed out in the claims. In the accompanying drawings, Figure 1 is a front view of a supporting frame, showing my improvement applied thereto, said frame being supported by a suitable truck. Fig. 2 is a plan view. Fig. 3 is a detail perspective view. Fig. 4 is a detail view of one of the links detached. The frame or support to which my improvement is adapted to be applied may be used in connection either with a car truck for transporting logs or upon a truck for carrying logs to a sawing mechanism in a sawmill.

"A refers to a beam, two of which are employed, each being provided on its upper edge with an angle iron, a, upon which the logs will rest to hold them from longitudinal movement. The beams are secured to suitable truck frames. B and B' refer to guide strips, which are secured to the upper and lower edges of the beam A, so as to project outwardly therefrom to form slots in which the serrated bars C may move vertically. The serrated bar has its ends reduced to lie between these guides and the edge of the beam. The upper edge of this bar C is T-headed, the outer flange of which is serrated, as shown at c. To the T-head of the bar C is secured a sliding block, D, one edge thereof being beveled or inclined, as clearly shown in Fig. 1. The sliding block has pivoted to its lower edge, opposite the serrations, a pawl, e, which has an inward projection which engages with the serrations c, said pawl being held normally against the serrations by a, spring, e'. The sliding block D can be slid or moved upon the serrated bar in one direction by simply pushing the same; but to move it in an opposite direction it is necessary to elevate the pawl.

"Suitably pivoted to the sides of the beam A are links E E, which are bifurcated at one end, as shown at f, and the sides thereof are recessed, as shown at f', so that when they are turned upon their pivots to lie horizontal, as shown in dotted lines, Fig. 1, the connecting bar will lie within said recesses to permit the serrated bar to be depressed sufficiently to allow the sliding blocks D to lie on a line or beneath the upper edge of the beam A. The connecting bar F is pivoted to each of the links and also to a trip rod, G. This trip rod is connected to a pivoted bar, H, the front end of which is recessed for the reception of the reduced end of the trip rod and within which the said trip rod is pivoted. This bar H is provided on its upper edge with a pin, which serves to hold in place a wrench or lever, I, for operating the same. The bar H is held on a line with the trip rod when the links are elevated, by a spring catch, h.

"The attachment hereinbefore described is applied on each side of the beam A. When it is desired to hold logs on the beam A, the lever or wrench I is slipped over the bar H to depress the spring h, and then by pressing the lever downwardly the parts are caused to assume the position shown in

dotted lines Fig. 1, the sliding blocks D being below the upper edge of the beam. Logs are then loaded upon the beams, and the serrated bars are elevated by moving the trip rods and parts connected therewith to the position shown in Fig. 1 in full lines, when the sliding blocks will be moved above the upper edge of the beam and can be slid upon the serrated bar to abut against the logs and prevent them rolling off the beams.

"Having thus described my invention, I claim—

"1. In combination with the beam A and serrated bar C, provided with adjustable sliding blocks, links pivoted to the beam and connected to each other to be operated simultaneously for elevating the serrated bar, and adjustable block carried thereby, substantially as shown, and for the purpose set forth.

"2. In combination with the beam A, guide strips B B, B' B', vertical moving bars held by said guide strips and provided with suitable sliding blocks D D, links E, pivotally secured to the beam A and to connecting bars F, and the trip rods G, pivotally secured to the ends of the bars H, the parts being organized substantially as shown, and for the purpose set forth.

"3. In combination with a beam, A, a vertically movable serrated bar carrying sliding blocks D, links E, having the upper portions thereof bifurcated and one of the slides recessed, a connecting bar pivotally secured to said links, and a trip rod for operating the same, substantially as shown, and for the purpose set forth.

"4. In combination with a compound trip rod, G, for the purpose set forth, a wrench or lever for moving one of the sections thereof, having a bifurcated head, one member extending beyond the other and curved at its end to operate or depress a spring catch employed for holding the trip rod, substantially as shown, and for the purpose set forth."

In 1889 there was issued to one Thompson a patent for "dog attachment for log cars," in which patent the patentee declared: .

"My invention relates to an improved dog attachment for log cars, wagons, sleds of all descriptions, and log decks in saw mills, and has for its object to provide a simple device whereby the logs may be effectually retained in position upon the body of the car or wagon or other log carrier or holder and expeditiously released therefrom at the proper time. The invention has for its further object to provide a series of dogs so arranged that the said dogs may be raised or lowered simultaneously, and wherein the dogs upon either side of the body may be manipulated independently"

—and among the specifications of which patent, referring to the accompanying drawings, there was the following:

"Figure 1 is an end view of a log car having my improvement applied thereto, and illustrating the dog in position to retain the logs upon the car; also illustrating a pivoted dog at one end of the bolster and a rigid dog at the opposite end. Fig. 2 is a side elevation of the bolster illustrated in Fig. 1, showing a dog in position to admit of the dumping of the logs. Fig. 3 is a plan view of the device a slightly modified form of bracket being shown. Fig. 4 is a side elevation of a bolster, illustrating a pivoted dog applied to both ends thereof; and Fig. 5 is a detail view of the manipulating lever and the link connection between the said lever and dog."

The next patent found in the record was issued to one Matheny January 23, 1894, who therein declared his invention to consist "of a new and improved form of bunk for logging trucks. The object is to provide a bunk which may be convenient to load, will hold the logs securely both against rolling off and sliding thereon, and may be easily and safely unloaded. This is secured by the means described in the specification hereinafter" set out, together with accompanying

drawings, in the course of which specifications he stated, among other things that:

"To hold the logs from rolling off sidewise I use chock blocks O, or cheese blocks as they are sometimes called. These are adjustable to different positions on the bunks, and may be dropped down level with the top of the bunk, so that the logs may roll off unhindered."

In the subsequent patent issued to one Parsons in 1905, he described his invention as follows:

"This invention relates to means for securing logs, lumber, and like material upon the bolsters of trucks or running gear of cars or wagons used in the hauling of same. The invention aims to provide for ready adjustment of the chock or load retainer upon the bolster, the firm securance of the same in the adjusted position, and its quick release when it is required to unload"

—adding a specific description of the various elements in the form preferred, together with accompanying drawings.

In view of the state of the art as disclosed by the foregoing patents, the contention that the McConnell patent is a pioneer one, and therefore entitled to the broad construction to which the latter are rightly entitled, does not, in our opinion, merit discussion. Being a mere improvement on the prior art, McConnell is only entitled to the precise devices described and claimed in his patent, and if the devices embodied in the Chandler patent can be differentiated, it is clear that the charge of infringement cannot be maintained. Such is the well-established law. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689; Boyd v. Janesville Hay Toll Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930.

It is in substance urged on behalf of the appellants that while some of the devices of the Chandler patent may differ in name, form, or shape, they do the same work, in substantially the same way, as similar devices of the McConnell patent, and as they confessedly accomplish the same results, that they are the mechanical equivalents of the latter, and that therefore infringement is established. But we agree with the court below that in at least two respects there is a substantial difference in the operation of the devices of the two patents in question. A careful examination of them and of the drawings respectively annexed satisfies us that the court below correctly described them as follows:

"The McConnell patent consists of two parallel beams, which are disposed crosswise of a car, and are detachably affixed thereto. Between and on the outer side of these beams are arranged rods so disposed as to operate a chock upon the opposite side of the car, so that when the car is loaded with logs the chock may be lowered and thus release the logs, by which they are dumped from the car. Between the beams, and secured to the opposing faces thereof, are combined guiding and stop devices, each of which consists of a face plate having an integral longitudinally extending ratchet bar, and also a longitudinally channeled guide formed integral with the face plate, located above, but beyond, the ratchet bar. Interposed between the stop devices of each pair is a chock consisting of a bowed or curved arm, having trunnions, designed to travel with the guides. Those portions of the trunnions outside of the guides and above the ratchet bars are provided with cam faces, termi-

nating in shoulders, so designed that when the chock is swung upward they turn downward into engagement with the adjoining teeth of the ratchet bar. An arm extends downward from each of the chocks, and pivotally connecting with it is a rod called a link, having a series of apertures any one of which is designed to receive a wrist or pin on the extended chock. From the other side of the car is another rod, which is connected with the shaft by another crank arm, and through the co-operation of these two rods the chock is operated in releasing it for dumping the logs. The crank arms are so arranged or disposed that when the chock is set between the ratchet teeth, in a position for holding the logs, the chock cannot be lowered, when the pressure of the logs is against it, except by pulling the co-operating rods outwardly. The chocks are slidable in the channeled guides, and when lowered may be adjusted to suit the size of the logs being loaded, but not when elevated or locked. The operation for unloading is by a handle on the outer and opposite end of the rods."

The claims of the McConnell patent are 10 in number, the broadest of which are the first and tenth, and therefore they only need be set out. They are as follows:

"1. An attachment for cars comprising parallel beams, means for securing the beams to a car platform, oppositely disposed chocks pivotally and movably mounted between the beams, fixed means for engaging the chocks when elevated only to hold them against sliding movement in one direction, and means carried by the beams for actuating the chocks."

"10. An attachment for cars comprising a chock, stop devices for engagement with the chock when in one position, and means for lowering the chock to disengage it from said devices and for sliding the chock while in lowered position."

In respect to the Chandler patent the court said:

"The Chandler patent has side beams as in the McConnell, secured to the inside of the beams at each end of the bunk, and opposite each other are bracket members, having corrugated or notched upper edges. Beneath the bracket member on one side is hinged a swinging plate, and on the other side a flange-like portion. A chock is provided, having trunnions, movably and changeably mounted in the notches of the bracket members; the upper end of the chock being adapted to project above the top of the beams or supporting surface of the bunk, and the lower end being provided with a lip or flange portion, there being a chock at each end of the bunk. The opposite side of the lower extension of the chock has a cleat which co-operates with the flange portion of the opposite bracket above described. The operation of the chock to hold it in position for receiving the load is effected by means of a rod extending from one end of the bunk to the other underneath the swinging plate; the rod having offset portions, so adjusted with reference to the swinging plate as that, when the rod is turned in one direction, it raises the swinging plate so that the lip on the lower extension of the chock comes into engagement with it, and the chock is held in place against pressure from the load. The rod is provided with a handle for its adjustment, and, when revolved in the opposite direction the swinging member is allowed to drop down, and the chock, being released, falls back, and the load is liberated. The chock can be moved outwardly or inwardly, whether the rod and swinging member are in position for holding the chock in place for receiving the load or not." .

To this should be added the further fact, shown by the record, that the chock of the Chandler patent is moved by hand from the bracket seats in which it rests and dropped into others as occasion requires, which is, of course, not a sliding movement.

The chock is one of the important elements of each of the patents, more or less bowed or curved, the function of which is to hold and

release the logs. In the McConnell patent the chocks are operated by means of rods, the ratchet bar and guiding and stop devices, the chocks being interposed between the opposing stop devices and having trunnions, and are designed to travel with the guides, sliding therein. . In that patent the chocks are engaged only when elevated; when lowered they may be adjusted to suit the size of the logs being loaded, but not when elevated or locked—the logs being unloaded by means of a handle on the outer and opposite end of the rods.

In the Chandler patent the chocks are mounted in the notches of the bracket members, beneath which, on one side, is hinged a swinging plate, and on the other side a flanged portion; the upper end of the chock being adapted to project above the beams of the bunk and the lower end being provided with a lip or flange. The opposite side of the lower extension of the chock has a cleat which co-operates with the flanged portion of the opposite bracket; the operation of the chock to hold it in position for receiving the logs being effected by means of a rod extending from one end of the bunk to the other, so adjusted with reference to the swinging plate as that, when the rod is turned in one direction, it raises the swinging plate so that the lip on the lower extension of the chock comes into engagement with it, and the chock is held in place against pressure from the load. The rod is provided with a handle, and when revolved in the opposite direction the swinging member is allowed to drop down, and the chock being released falls back and the load is liberated. In the Chandler patent the chock can be adjusted by moving it forward or back, whether in an elevated position or not, and whether the means of engaging the chock are set or not—it being, as already said, movable by hand from one place to another.

It is apparent, we think, that the respective mechanisms for the adjustment of the chocks, and the means for engaging and disengaging them, are substantially unlike.

The judgment is affirmed.