### OVERLIN v. DALLAS MACHINE & LOCOMOTIVE WORKS.

(Circuit Court of Appeals, Ninth Circuit. March 24, 1924. Rehearing Denied May 5, 1924.)

No. 4156.

Patents ⬭328—1,289,529, for improvements in lumber trucks, held not infringed.
   Plaintiff's patent, No. 1,289,529, issued December 31, 1918, for improvements in lumber trucks, *held* not infringed, as defendant's device, made under his patent No. 1,422,958, issued July 18, 1922, for improvements in lumber carriers or trucks, can be differentiated structurally and functionally to a substantial degree from plaintiff's device.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in equity by William S. Overlin against the Dallas Machine & Locomotive Works to enjoin infringement of plaintiff's patent and for an accounting. From a decree for defendant, plaintiff appeals. Affirmed.

William R. Litzenberg, of Los Angeles, Cal.; and Clark, Skulason & Clark, of Portland, Or., for appellant.

Ridgway, Johnson & Montgomery, of Portland, Or., and Oscar Hayter, of Dallas, Or. (Albert B. Ridgway, of Portland, Or., of counsel), for appellee.

Before HUNT, MORROW, and RUDKIN, Circuit Judges.

MORROW, Circuit Judge. Plaintiff in the court below, appellant here, is the owner of letters patent No. 1,289,529, issued December 31, 1918, for improvements in lumber trucks. Defendant in the court below, appellee here, is the owner of letters patent No. 1,422,958, issued

July 18, 1922, for improvements in lumber carriers or trucks. Both trucks are designed to accomplish the same work.

Plaintiff claims that defendant's truck is an infringement of his patent. He accordingly brought this action in the United States District Court for the District of Oregon, where the court held that there was no infringement. Plaintiff has appealed to this court.

Plaintiff's invention is described in his patent as follows:

"This invention relates to trucks for handling heavy and bulky articles, such as piles of lumber, for example, and consists in improvements in the construction of the body or frame and of the running gear, in the means for picking up the load, and in the mechanism for operating said means. The truck, in its preferred form and as herein illustrated, is a motor truck, and the hoisting mechanism is operated by the same motor which drives the rear wheels."

The specification declares further (omitting reference to figures on the drawing):

"The frame is of the type which enables the truck to be run over the lumber pile, or other load to be transported, and consists of two rolled iron beams of standard section, preferably I-beams, bent into inverted U-shape, the legs standing vertically at the four corners of the truck, and the curved portions forming arches across the front and rear of the truck. Longitudinal beams join the vertical members near their top and bottom, respectively."

It is further specified (again omitting reference to figures on the drawing):

"It will be seen that, in the form of the invention shown, the vertical planes of the points of support of the load coincide with those of the wheel axles, and, in the form shown, the same is true with regard to the driving or traction wheels, and that the construction of the arched supporting members of I-beams or similar structural shapes provides a very strong, yet simple, frame; the legs of said beams forming very convenient and efficient guideways for the lifting shoes and for the rods which transmit the load to the wheels."

The patent contains eight claims. In claim one the invention is further described as a "wheeled truck," in which "the combination" consists—

"of longitudinal side frame members, transverse arched members, the legs of which are secured to said side members, springs secured to said legs above the wheels, a strut between each spring and the corresponding wheel, and load supports carried on the inside of said legs."

In claim 2 the truck is more specifically described as:

"The combination, with the wheels and lateral frame members, of vertical arched frame members, the legs of which are secured to said lateral members, the center planes of said arched members intersecting the wheel axles, bearings and springs secured to the outside of said legs, struts guided in said bearings and engaging said springs at their upper ends and the wheel spindles at their lower ends, and load-carrying means slidably mounted on the inside of said legs."

In claim 3 the "transverse arched members" of claim 1 are described as an "arched I-beam." In claim 4 the member is described as "a vertical arched beam connecting side members." In claim 5 this member is described as "an arched beam of inverted U-shape." In claim

6 this part of the construction is described as "a pair of vertical arched transverse frame members connecting said side members." In claim 7 this part of the construction is described as:

"A front and rear transverse frame member, composed of an arched beam with its legs rigidly secured to said side members."

In claim 8 this construction is described as:

"An inverted U-shaped frame, composed of arched beams connected by longitudinal side members."

It thus appears from the specification and the claims that essential features of the truck consist of two rolled iron beams of standard section (construction), "preferably I-beams," bent to inverted U-shape; the legs standing vertically at the four corners of the truck, and the curved portions forming arches across the front and rear of the truck. The preference for "I-beams" for the arch-supporting members appears to be a preference over "girder beams" or similar structural shapes for the supporting members, a preference immaterial in this case. The essential feature is that the beam, whatever its structural shape may be, shall be bent to an "inverted U-shape," forming a rounded arch.

The defendant, in his answer, did not set up his patent No. 1,422,958 as a defense to plaintiff's action, but he introduced the patent in evidence, and also a model of the mechanism therein described, which is also a model of the truck which plaintiff claims is an infringement of his patent. Defendant sets up as a defense to the action noninfringement and that plaintiff's patent does not involve or contain any patentable novelty, invention, or discovery, and does not cover or disclose any new art, machine, or manufacture, nor any new and useful improvement thereof. But, as the prior art was not made a controlling issue at the trial, we need not discuss that question. It is sufficient for the present purpose to recognize the prima facie evidence of the validity of plaintiff's patent, and that in the court below, in the prior case of Ross v. East Side Mill & Lumber Co. (D. C.) 257 Fed. 754, its validity does not appear to have been challenged.

We may also recognize the prima facie evidence of the validity of defendant's patent, and the presumption it carries that the patent officials found a patentable difference between the two machines. Otherwise the defendant would not, at the subsequent date of his application, have obtained a patent for his mechanism. The simple question, then, is: Can the defendant's truck be differentiated structurally and functionally to a substantial degree from that of the plaintiff, as described and claimed in his patent? The structural differences between the two trucks are easily identified and differentiated. May these differences be differentiated functionally to a substantial degree?

In plaintiff's truck the vertical beams, bent into a U-shape, as required by the specification, stand at the four corners of the truck frame, curving across the front and rear of the frame in the well-known form of a rounded arch. These vertical beams are connected by longitutinal side frame members, the sole purpose of which is to connect the two transverse arches without any weight supporting func-

tion. The vertical planes of the points of support of the load coincide with those of the wheel axles, front and rear, and there is where the weight is suspended. The construction of these arch-supporting members is described as providing a very strong, yet simple, frame; the legs of said beams forming a very convenient and effective guideway for the lifting shoes and for the rods which transmit the load to the wheels. It is obvious that the load strain of this structure is suspended from the arch beams vertically over the axles of the wheels, and not in any degree from the longitudinal side members or girders, and that these members do not so function.

In defendant's structure the transverse members, front and rear, are flat, composed of channel irons and plates riveted or bolted together, making a square construction, with ends of the transverse members extending beyond the connection with the side members, and the frame is supported by legs placed beneath these extended ends of the transverse beams. The front and rear transverse members are connected by longitudinal side girders, upon which side girders the load is partly suspended and is intended so to function.

This fact is established by the evidence that, by reason of the lifting device on the deck platform, the live load is suspended from the deck in the rear of the machine 3½ inches forward of the center load support, or wheels, and in the forward end of the machine the center of the live load support is 2½ inches forward of the center of the load support, throwing a portion of the load to the front of the machine, and upon the side members. The defendant's first construction had 6-inch I-beams for the side members, which proved to be too light, and the load caused the beams to sag. He thereupon substituted heavier beams in the form of 8-inch channel iron, which he reinforced with counter braces, forming supporting trusses under the side beams.

The plaintiff contends that the terms, or phrases "transverse arched members" or "vertical arched frame members," in the claims of plaintiff's patent, can mean nothing else than members associated together to form an arch which will span the space to be left open for the truck to straddle over the load to be picked up, and that, so construed, it is purely a matter of choice, or simply mechanical skill, to determine whether a rounded form or a flat form of arched structure shall be used; that the only functions required of either form are, first, to straddle over the load to be picked up; second, to furnish side legs or members, on the inner sides of which load-lifting devices shall be held and guided, and on the outer sides of which the wheel fork stems, or struts, can be slidingly connected with means for interposing springs between the sides of the frame or body and the wheel struts. This, the plaintiff contends, is the novel construction which secured the allowance of the claims, and that the same construction is found in defendant's mechanism.

The answer to this contention is that plaintiff's patent is not a pioneer patent, and was not so claimed in his application to the Patent Office. He there declared that he had "invented certain new and useful improvements in lumber carriers." In the details of his specification and claims he follows this declaration specifically, and is therefore limited to the

narrow interpretation involved in the combination he has described in his patent for transmitting the load to the wheels and for the other essential elements of the combination. But the arch construction is a well-known architectural form, and when it is an essential element in a structure, as in this case, a flat or square frame is not its equivalent in either strength, mechanical efficiency, or function.

The lifting mechanism of the defendant's truck can also be easily differentiated from that of plaintiff's. In plaintiff's patent the lifting devices are described in the specification (omitting figures referring to the drawings) as consisting of—

"shoes or lifting plates which are slidably mounted between the inner flanges of the lower ends of the leg beam, angle irons being secured to said flanges and bars at the angles of the same, with the web of the beam to form guideways for the vertical members of said shoes to slide in."

Each shoe with its connecting mechanism is described in detail, from which we learn that the lifting element is a "cable from each shoe," and that it "passes over a guide sheave to a winding drum to which the end is attached; that from the front shoe" the cable "passes around said drum in the opposite direction to that from the rear shoe. The same arrangement is duplicated on the other side of the machine."

The defendant, in the specification of his patent, differentiated his lifting mechanism from that of the plaintiff by the specific declaration that, instead of employing ropes or cables for operating the lifting shoes, he employ shafts and gearing of substantial and reliable construction, and which are controlled by clutch mechanism, in turn controlled by suitable levers. The lifting elements in defendant's mechanism are not mounted between the inner flanges of the vertical members of the frame, but are partially guided therein, and are mounted on the platform plates of the frame, being raised and lowered by a rack and pinion mechanism, and not by cables, as' in plaintiff's device. There are other differences in the two trucks, but these are sufficient to show that, in the several functions of the structure as a whole, defendant's truck is clearly differentiated from that of the plaintiff.

In Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689, the action was for an infringement of four letters patent for improvements in a portable machine for weaving wire fencing fabric in the field. The defendant set up, for its construction of a similar machine, a subsequent patent for improvements in wire fabric machines. · The Supreme Court considered that both the complainant's and defendant's machines were improvements on the prior art, and the question was whether the specific improvements of the one actionably invaded the domain of the other. Upon that question the court held (189 U. S. at page 23, 23 Sup. Ct. 521, 527) that:

"The presumption from the grant of the letters patent is that there was a substantial difference between the inventions."

In Johnson v. Johnson (C. C.) 190 Fed. 20, 25, the action was for an infringement of letters patent No. 850,936, issued April 23, 1907, for an improvement in tennis court markers. The alleged infringing machine was made under letters patent No. 929,597, issued July 27,

1909. The court held, under the authority of the foregoing decision of the Supreme Court, that:

"The law is well settled that, where the patents sued on are not pioneer patents and do not embody a primary invention, but are only improvements on the prior art, and defendant's machines can be differentiated, the charge of infringement cannot be maintained."

The same doctrine was upheld by this court in Eaid et al. v. Twohy Bros. Co. et al., 230 Fed. 444, 447, 144 C. C. A. 586, and in Stebler v. Porterville Citrus Ass'n, 248 Fed. 927, 930, 161 C. C. A. 45.

In Union Steam Pump Co. v. Battle Creek Steam Pump Co. et al., 104 Fed. 337, 343, 43 C. C. A. 560, 566, the case involved patents granted to different improvers on prior constructions designed to produce substantially the same result. The Supreme Court held that the invention of each is measured by its improvement:

"If, however, such changes of size, form, or location effect a change in the principle or mode of operation, such as breaks up the relation and co-operation of the parts, this results in such a change in the means as displaces the conception of the inventor, and takes the new structure outside of the patent."

This paragraph of the court's opinion is cited by the Supreme Court in Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 414, 25 Sup. Ct. 697, 702 (49 L. Ed. 1100), with approval, where it is also said:

"In determining infringement we are entitled to look at the practical operation of the machines. * * * If the device of the respondent shows a substantially different mode of operation, even though the result of the operation of the machine remains the same, infringement is avoided."

We are of the opinion that, under the well-established principles of patent law, defendant's truck does not infringe plaintiff's device.

The decree of the District Court is affirmed.