## INTERNATIONAL HARVESTER CO. v. KILLEFER MFG. CO. et al.

### No. 6712.

Circuit Court of Appeals, Ninth Circuit.

Sept. 7, 1933.

H. P. Doolittle, of Chicago, Ill., and Percy S. Webster, of Stockton, Cal., for appellant.

*Rehearing denied November 23, 1933.

Lyon & Lyon, Lewis E. Lyon, and Frederick S. Lyon, all of Los Angeles, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is a patent infringement suit for injunction, for an accounting of profits and for damages. From a decree in favor of defendants, the plaintiff has appealed.

Appellant is the owner of what is known as the Warne patent, No. 1,517,659, covering certain improvements in the operation of a tractor propelled tandem disk harrow. The court below found that the harrow manufactured by defendants appellees "is substantially illustrated by the patent issued to Robert Killefer, No. 1,619,208." As a conclusion of law the court held "that the harrows so manufactured by defendants, * * * do not infringe upon Letters Patent in suit No. 1,517,659."

Letters patent No. 1,517,659 were issued December 22, 1924, to Frederick C. Warne upon application filed December 17, 1917. The Killefer patent was applied for May 12, 1924, and patent issued March 1, 1927. This patent recites: "This invention is an improvement on the cultivator for which letters patent No. 1,487,412, was granted to Daniel W. Waters on March 18, 1924."

Appellees by their answer alleged invalidity of the Warne patent because the things purported to be patented had long prior thereto been patented or described or contained in some eighty patents particularly referred to by name of patentee, date, and number. At the hearing before the special master, twenty-five of such patents were offered and received in evidence.

The tandem disk harrow is an old mechanical tillage implement. The improvements in question in the patent in suit relate to the operation of such harrows by tractor after that mechanical instrument replaced animal motive power. The harrow is intended for operation behind the usual farm tractor, and the hitch used is designed to give the tractor operator a means by which he can adjust the angle of the gangs by using the draft power applied through the hitch.

The following diagram is a perspective view of the front draft frame of the Warne harrow and its relatively movable draft block and connections, together with the controlling and operating mechanism therefor; the disk gangs being shown in their nonangled or transporting position:

**Fig. 4.**

Brown—
Red——

The following diagram is a central longitudinal sectional view of the same:

**Fig. 5.**

Brown—
Red——

Inventor

Frederick C. Warne

By

Obed K. Billman *Attorney*

The following diagram shows the disk gangs of the Warne harrow being in their extreme angled or working positions:

Brown—
Red—

*Fig.2.*

The following diagrams show, first, plan view of a slidable draft connection for variation of the angle of disks; and, second, a sectional side elevation of the draft connection as in the Killefer harrow:

Fig. 5.

58

The following diagram shows the disk gangs of the Killefer harrow being in their extreme angled or working position:

FIG.1.

—Brown
—Red

The following diagram shows the disk gangs of the same harrow in nonworking or cultivating position:

FIG.2.

—Brown
—Red

The operation of the Warne mechanism is described as follows: Fixed draft members are provided to which the gang frames are pivotly connected. The fixed draft assembly is colored red in figure 4 and figure 5, and includes the plate 23, bars 1, 2, 16, 5 and 8. Movable draft members, colored brown in figure 4 and figure 5, are connected to the inside ends of the front gang frames and toward the outside ends of the rear frames 29 and 30. These are in turn connected through draft bar 19 to clevis 20. Relative movement between the fixed and movable members is controlled by a rack 20a pinion 24, engaging the rack, ratchet 22a, pawl 27, which engages the ratchet and hand-wheel 22, by which the pinion and ratchet can be turned. The pin 18a in the movable member 18, working in the slot 19a in fixed member 19, limits the movement between the fixed and movable members. Assuming the gangs in nonworking position, the wheel can be turned to bring the plate 18 forward to a predetermined position. The tractor can then be driven forward, exerting a pull on the fixed members while the movable members are permitted to float until the bolt 18a reaches the end of the slot. The harrow is then in working position. The gangs also may be angled by backing the tractor. The ratchet then permits free rearward movement and the force of the tractor is applied through the movable members to push the gangs against the resistance of the earth to working position. When the tractor is pulled forward, the pawl engages in the ratchet and the pin 18a engaged against the end of the slot 19a holds the harrow in working position. When the operator wishes to resume parallel or nonworking position, he releases the pawl from the ratchet, leaving the fixed members free to float. Responsive to the pull on the movable members and the resistance of the earth, further forward movement causes the gangs to assume the nonworking position. It is to be noted that the movable members are connected directly to each of the four gangs from the drawhead or plate 18; that in angling the gangs the movable members are either pushed back or permitted to assume a rearward position relative to the fixed members; that in bringing the gangs to parallel the movable members are pulled forward by the draft of the tractor.

The operation of the Killefer mechanism is described as follows: Two front and two rear gangs in frames are arranged in tandem. Attached to the front frames at the outer ends are movable draft members 21, colored in brown on the figures, which are connected to the draft bars 23. The bars 23 are bolted to draft hitch plate 39, leaving space between them in which the ratchet bar 26 is slidably fitted. At the inner rear corners of the front frames, bars 45 are connected to the side bars 7 at one end, and the front of the frames of the rear gangs at the outer end. The so-called fixed members are attached to the ratchet bar 26, colored red in the figures, through the ball-cranks 14. The fixed member 13 is connected to the front gangs at the inner ends and then through the yoke 41 the bars 43 and 42 connect with the inner ends of the rear gangs. The fixed and movable members can be locked together against forward movement by the ratchet 26 and pawl 29, while movement in the opposite direction is permitted at all times. A rope from the lever 31 leads to the driver's seat of the tractor. Assuming the harrow in parallel position, the tractor driver pulls on the rope 46, releasing the pawl 29 from the ratchet 26. This permits the fixed members to "float" when the tractor is driven forward, applying the draft force solely through the bars 21. As the front frames move, the draft force is transmitted through the bars 45 to the rear frames, causing them to angle in a direction opposite to the direction of angle taken by the front gangs. During this movement the ball crank assembly compensates for the movement of the inner ends of the front frames. There is no corresponding movement at the inner ends of the rear frames. The gangs are thus put in operating position. To return the gangs to parallel position, the driver causes the tractor to back, which, by reversing the movement described above, causes the gangs to return to parallel position. Each gang is pivoted at its inner end. The force in angling is applied solely to the front gangs; there being no movable draft member attached to the rear gangs. The rear gangs angle by force transmitted from the front gangs when they are turning into angle.

The only expert witness who testified at the hearing before the special master was W. A. Doble, Jr., called on behalf of defendants as a mechanical engineer and qualified as such expert. In the testimony of this witness there is not only considered the Warne and Killefer patents, but reference is also made to a number of others covering improvements in the same art. The testimony is lengthy, and we will not attempt to review it. A brief excerpt will be sufficient to illustrate that error if it exists in the decree may not be readily apparent.

"The mode of operation of the Warne harrow is, as we have already discussed, that a forward draft pull both angles and pulls the gangs out of angled position, whereas in the Killefer structure a forward pull angles the gangs, and a backward force returns the gangs to parallel position. In the Killefer structure we have no means such as the slot 19a in the draft bar 19, which form the interlock of the Warne structure. There is not found in the Killefer structure any part or element similar to the slot 19a of the Warne patent nor any structure similar to the hand wheel 22 of the Warne patent. It is not possible to manually pull the Killefer gangs out of the angled position as in the Warne structure."

The complaint put in issue twenty-one claims. The brief of appellant eliminates from the issues to be considered by this court all claims excepting claims 1, 2, 5, 23, 24, 26, 29, 31, and 46. In the court below these claims were placed in three groups, and by that grouping the claims now relied upon appear as follows: Group 1—Nos. 1, 24, 26, 29, 31. Group 2—Nos. 2, 5. Group 3—No. 46.

 The report of the special master, confirmed by the court below, correctly determined the issues presented in this case. From that report we quote the following with approval:

"The claims in the first group are directed to the disk gangs, the fixed and movable draft connections and the functional interrelation of these elements in angularly adjusting the gangs. Claim 1 is illustrative of this group and reads as follows:

" 'In a tillage implement, a plurality of tillage gangs arranged in front and rear pairs, and relatively longitudinally fixed and movable draft connections flexibly connected to the inner and intermediate portions of said front and rear pairs of gangs and means for actuating the movable connections by the forward draft on the implement for angularly adjusting the gangs.'

"The claims in Group 2 refer to the frame units which carry the disk gangs and the draft connections between the frames and their relation to each other in adjusting the angle of the gangs. Claim 4 is an example, and reads as follows:

" '4. In a tractor drawn tillage implement, tandem frames and tillage gangs carried thereby, and relatively shiftable draft connections flexibly connected to said frames and gangs and forwardly and rearwardly movable relative to each other by the draft of the tractor for angularly adjusting said gangs while in motion.'

"The claims in Group 3 are directed to the draft device which, in combination with the frames and disk gangs, provides means for locking the gangs in a predetermined position of angularity and also provides means for releasing the lock from a point adjacent to the harrow. Claim 45 is illustrative and reads as follows:

" 'In a harrow, angularly adjustable disk gangs, means to which power is adapted to be applied for advancing said harrow, and means operatively related to said first mentioned means and to said gangs and controllable from a distance, whereby the draft power may be utilized to adjust the angles of said gangs.'
* * *

"By referring to defendants' Exhibit H (Patent No. 1,421,113) a form of harrow developed by the defendants will be seen. While this is not a prior art structure, it was developed by the defendants before the patent in suit issued. Here will be found the same pivotal locations as in the harrow in suit. The ball crank members are also found here.

"It is logical to assume that the defendants developed their present harrow by working from this structure to the new much in the same manner that Warne worked from his prior structure to the new. The extensive introduction of the gasoline engine tractor in farming furnished the incentive and explains the late date at which these harrows appeared in a crowded and competitive field.

"In adapting their harrow to tractor operation the defendants were free to use the draft force to angle the front gangs and to arrange the draft means 'so that the angling could be controlled. The old harrows of La Dow and Clark suggest in a crude way the manner in which this could be done. An examination of the Waterman harrow (Patent No. 1,081,918. Defendants' Exhibit F-21) discloses that the connection between the front and rear gangs by bars 32 is the same as the connection between the front and rear gangs in the defendants' structure through the bars 45. The relative movement of front and rear gangs in the defendants' harrow is similar to that in the Waterman structure.

"The defendants used a ratchet and pawl arrangement for controlling the angling action of the draft force which differs in principle from the plaintiff's wheel, ratchet, and

the lost motion arrangement. In the plaintiff's structure the degree of angling is predetermined by setting the hand-wheel or backing the tractor against the clevis before the draft force is applied to effect the angling. In the defendants' structure the degree of angling is determined by the operator's dropping a pawl into the ratchet at a desired point. To return the plaintiff's harrow to parallel position the pawl 27 is released from the ratchet on the hand-wheel and the harrow is driven forward. The defendants' harrow is returned to parallel position by backing the tractor, which accomplishes the reverse of the angling movement.

"As bearing upon the scope of the invention covered by the claims, the master has considered the decision of the Patent Office in an interference (No. 43,841 in Patent Office, defendants' Exhibit E) between the plaintiff and several others. The issue in that interference was upon a single count, as follows:

" 'A cultivator comprising a front pair of implement gangs, a rear pair of implement gangs, a draft device and means operative by pulling of the draft device to shift the inner ends of the gangs of the front pair and the inner ends of the gangs of the rear pair relatively in opposite directions.'

"This is a broad claim that would read upon the plaintiff's and defendants' structures and any other structure wherein a draft device operated to angle the gangs in a double disk harrow. The Patent Office decided that this issue was unpatentable over the art of record.

"Plaintiff's counsel directs his opening argument to a demonstration of the identity of function of the angling means of the two harrows and contends that the means used by the defendants are equivalent to the means disclosed in patent in suit. The range of equivalents to which the patent is entitled depends upon the scope of the invention. The range of equivalents to be allowed cannot be extended to cover means which have clear antecedents in the prior patented art. It has been previously pointed out that the use of the draft force to angle the gangs of a harrow is not new and that the particular arrangement of gangs and draft means used by the defendants have been used in prior structures such as the Waterman harrow. Claims 1 to 32 specifically include as an element draft means connected to both the front and rear gangs or gang frames which draft means effect the angling of the gangs. An examination of the Warne harrow shows these draft connections connecting the draw-head 18 with each of the

four gangs. The Killefer harrow has no connection from the draft device to the rear gangs. There is no connection between the inner ends of the front gangs and outer ends of the rear gangs. For the reasons stated above, the master concludes that the draft connections used by the defendants are not the equivalent of the draft means for accomplishing the same result in the patent in suit, and that the first and second group of claims, being Nos. 1, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 2, 3, 4, 5, 6, and 7, are not infringed.

"The third group, comprising claims Nos. 38, 45, and 46, is directed to a means of angling the gangs in combination with means provided for controlling the angling action. The control means, as previously pointed out, is found in the wheel, ratchet, and lost motion arrangement. Each claim specifies that the control means can be operated from a distance—i. e., by a tractor operator from the seat of the tractor. It is difficult to see that any invention is involved in placing the wheel and releasing lever within reach of the driver. It is a matter of good design to locate controls in a handy position in all of the structures examined in this case. This applies as well to the rope control used by defendants. Every harrow has some means of controlling the degree of angle. Both Stoddard, Exhibit F-15 (Patent No. 347,744), and Waterman, Exhibit F, use a rack or ratchet and pawl. The harrow of Bramer and Crowley (1881) used a selective means wherein the operator manually placed a pin in one of a series of holes. From the above the master concludes that the control means of the defendants is not equivalent to the control means of the plaintiff's patent, and that Claims Nos. 38, 45, and 46 are not infringed."

In Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935, the Court said:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the

patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

"Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. Cahoon v. Ring [Fed. Cas. No. 2,292], 1 Cliff. 620."

As said by this court in Grand Rapids Show Case Co. v. Weber Show Case & Fixture Co., 38 F.(2d) 730, 731:

" * * * 'It is not the result, effect, or purpose to be accomplished which constitutes an invention, but the mechanical means or instrumentalities by which the object sought is to be attained. Patents cover the means employed to effect results.' Kohler v. Cline Electric Mfg. Co. (D. C.) 28 F.(2d) 405, 406. 'The thing patented is the particular means devised by the inventor by which that result is attained, leaving it open to any other inventor to accomplish the same result by other means.' Electric R. Signal Co. v. Hall Ry. Signal Co., 114 U. S. 87, 5 S. Ct. 1069, 1075, 29 L. Ed. 96."

In Eaid v. Twohy Bros. Co., 230 F. 444, 447, this court also said:

"Being a mere improvement on the prior art, McConnell is only entitled to the precise devices described and claimed in his patent, and if the devices embodied in the Chandler patent can be differentiated, it is clear that the charge of infringement cannot be maintained. Such is the well-established law. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689; Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 S. Ct. 837, 39 L. Ed. 973; Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; McCormick v. Talcott, 20 How. 402, 15 L. Ed. 930."

Error in the decree as entered has not been shown. The decree is affirmed.